[L. A. No. 25881.   In Bank.   Sept. 5, 1961.]

WILLIAM MINTON et al., Plaintiffs and Respondents, v.
MAUDE N. CAVANEY, as Executrix, etc., Defendant
and Appellant.

William E. McIntyre for Defendant and Appellant.

William M. Cavaney, in pro. per., as Amicus Curiae on behalf of Defendant and Appellant.

Charles H. Manaugh, Michael K. Lanning and Sidney L. Gelber for Plaintiffs and Respondents.

TRAYNOR, J.—The Seminole Hot Springs Corporation, hereinafter referred to as Seminole, was duly incorporated in California on March 8, 1954. It conducted a public swimming pool that it leased from its owner. On June 24, 1954, plaintiffs' daughter drowned in the pool, and plaintiffs recovered a judgment for $10,000 against Seminole for her wrongful death. The judgment remains unsatisfied.

On January 30, 1957, plaintiffs brought the present action to hold defendant Cavaney personally liable for the judgment against Seminole. Cavaney died on May 28, 1958, and his widow, the executrix of his estate, was substituted as defendant. The trial court entered judgment for plaintiffs for $10,000. Defendant appeals.

Plaintiffs introduced evidence that Cavaney was a director and secretary and treasurer of Seminole and that on November 15, 1954, about five months after the drowning, Cavaney as secretary of Seminole and Edwin A. Kraft as president of Seminole applied for permission to issue three shares of Seminole stock, one share to be issued to Kraft, another to F. J. Wettrick and the third to Cavaney. The Commissioner of Corporations refused permission to issue these shares unless additional information was furnished. The application was then abandoned and no shares were ever issued. There was also evidence that for a time Seminole used Cavaney's office to keep records and to receive mail. Before his death Cavaney answered certain interrogatories. He was asked if Seminole "ever had any assets?" He stated that "insofar as my own personal knowledge and belief is concerned said corporation did not have any assets." Cavaney also stated in the return

to an attempted execution that "[I]nsofar as I know, this corporation had no assets of any kind or character. The corporation was duly organized but never functioned as a corporation."

Defendant introduced evidence that Cavaney was an attorney at law, that he was approached by Kraft and Wettrick to form Seminole, and that he was the attorney for Seminole. Plaintiffs introduced Cavaney's answer to several interrogatories that he held the post of secretary and treasurer and director in a temporary capacity and as an accommodation to his client.

Defendant contends that the evidence does not support the court's determination[1] that Cavaney is personally liable for Seminole's debts and that the "alter ego" doctrine is inapplicable because plaintiffs failed to show that there was " '(1) ... such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' " (*Riddle* v. *Leuschner*, 51 Cal.2d 574, 580 [335 P.2d 107]; *Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; *Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673].)

The figurative terminology "alter ego" and "disregard of the corporate entity" is generally used to refer to the various situations that are an abuse of the corporate privilege. (Ballantine, Corporations (rev. ed. 1946) § 122, pp. 292-293; Lattin, Corporations, p. 66; Latty, *The Corporate Entity as a Solvent of Legal Problems*, 34 Mich.L.Rev. 597 (1936).) The equitable owners of a corporation, for example, are personally liable when they treat the assets of the corporation as their own and add or withdraw capital from the corporation at will (see *Riddle* v. *Leuschner*, 51 Cal. 2d 574, 577-581 [335 P.2d 107]; *Thomson* v. *L. C. Roney & Co.*, 112 Cal.App.2d 420, 429 [246 P.2d 1017]); when they hold themselves out as being personally liable for the debts of the corporation (*Stark* v. *Coker*, 20 Cal.2d 839, 847 [129 P.2d 390]); or when they provide inadequate capitalization and actively participate in the conduct of corporate affairs.

---

[1] Defendant did not request that the findings of the trial court be included in the record on appeal. It must be presumed therefore that the findings support the judgment. (See 3 Witkin, California Procedure, pp. 2238-2239.)

(*Automotriz etc. De California* v. *Resnick, supra,* 47 Cal.2d 792, 796, 797; *Riddle* v. *Leuschner, supra,* 51 Cal.2d at 580; *Stark* v. *Coker,* 20 Cal.2d 839, 846-849 [129 P.2d 390] ; *Shafford* v. *Otto Sales Co. Inc.,* 149 Cal.App.2d 428, 432 [308 P.2d 428] ; see *Carlesimo* v. *Schwebel,* 87 Cal.App.2d 482, 492-493 [197 P.2d 167] ; Ballantine, Corporations (rev. ed. 1946) § 129, pp. 302-303; Lattin, Corporations, pp. 68-72; Fuller, *The Incorporated Individual: A Study of the One-Man Company,* 51 Harv.L.Rev. 1373, 1381-1383.)

In the instant case the evidence is undisputed that there was no attempt to provide adequate capitalization. Seminole never had any substantial assets. It leased the pool that it operated, and the lease was forfeited for failure to pay the rent. Its capital was " 'trifling compared with the business to be done and the risks of loss. . . .' " (*Automotriz etc. De California* v. *Resnick, supra,* 47 Cal.2d 792, 797.)      The evidence is also undisputed that Cavaney was not only the secretary and treasurer of the corporation but was also a director. The evidence that Cavaney was to receive one-third of the shares to be issued supports an inference that he was an equitable owner (see *Riddle* v. *Leuschner, supra,* 51 Cal.2d 574, 580), and the evidence that for a time the records of the corporation were kept in Cavaney's office supports an inference that he actively participated in the conduct of the business. The trial court was not required to believe his statement that he was only a ''temporary'' director and officer ''for accommodation.'' In any event it merely raised a conflict in the evidence that was resolved adversely to defendant. Moreover, section 800 of the Corporations Code provides that ''. . . the business and affairs of every corporation shall be controlled by, a board of not less than three directors.'' Defendant does not claim that Cavaney was a director with specialized duties (see 5 U.Chi.L.Rev. 668).      It is immaterial whether or not he accepted the office of director as an ''accommodation'' with the understanding that he would not exercise any of the duties of a director. A person may not in this manner divorce the responsibilities of a director from the statutory duties and powers of that office.

There is no merit in defendant's contentions that the ''alter ego'' doctrine applies only to contractual debts and not to tort claims (*Mirabito* v. *San Francisco Dairy Co.,* 1 Cal.2d 400, 406 [35 P.2d 513] ; see Ballantine, Corporations (rev. ed. 1946) § 127, p. 298) ; that plaintiffs' cause of action

abated when Cavaney died (Civ. Code, § 956; see *Damiano* v. *Bunting,* 40 Cal.App. 566, 567 [181 P. 232]), or that the judgment in the action against the corporation bars plaintiffs from bringing the present action. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835].) ▮▮ Defendant Cavaney waived the defense of the statute of limitations by failing to plead that defense in the answer to the complaint or by specifying the statute of limitations as a ground of its general demurrer. (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740, 741-745 [47 P.2d 273]; *Miller* v. *Parker,* 128 Cal.App. 775, 776 [18 P.2d 89]; see *Burke* v. *Maguire,* 154 Cal. 456, 462 [98 P. 21]; 2 Witkin, California Procedure, §§ 489, 545, pp. 1476-1477, 1541; 31 Cal.Jur.2d, Limitations of Actions, § 243, p. 659.)

▮▮ In this action to hold defendant personally liable upon the judgment against Seminole plaintiffs did not allege or present any evidence on the issue of Seminole's negligence or on the amount of damages sustained by plaintiffs. They relied solely on the judgment against Seminole. Defendant correctly contends that Cavaney or his estate cannot be held liable for the debts of Seminole without an opportunity to relitigate these issues. (*Motores De Mexicali* v. *Superior Court,* 51 Cal.2d 172, 176 [331 P.2d 1]; see also *Dillard* v. *McKnight, supra,* 34 Cal.2d 209, 214.) Cavaney was not a party to the action against the corporation, and the judgment in that action is therefore not binding upon him unless he controlled the litigation leading to the judgment. (*Motores De Mexicali* v. *Superior Court, supra,* 51 Cal.2d 172, 175; *Thomson* v. *L. C. Roney & Co., supra,* 112 Cal.App.2d 420, 427; *Mirabito* v. *San Francisco Dairy Co.,* 8 Cal.App.2d 54, 58-59 [47 P.2d 530]; see Rest., Judgments, § 84.) Although Cavaney filed an answer to the complaint against Seminole as its attorney, he withdrew before the trial and did not thereafter participate therein. The filing of an answer without any other participation is not sufficient to bind Cavaney. ▮▮ "In order that the rule stated in this section [that a person in control of the litigation is bound by the judgment] should apply it is necessary that the one in whose favor or against whom the rules of res judicata operate participate in the control of the action and if judgment is adverse, be able to determine whether or not an appeal should be taken. It is not sufficient that he supplies the funds for the prosecution or defense, that he appears as a witness or cooperates without having control."

(Rest., Judgments, § 84, comment e; see *Motores De Mexicali* v. *Superior Court, supra,* 51 Cal.2d 172, 176.)

The judgment is reversed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment of reversal on the ground that (as stated in the majority opinion, *ante,* p. 581) "In this action to hold defendant personally liable upon the judgment against Seminole plaintiffs did not allege or present any evidence on the issue of Seminole's negligence or on the amount of damages sustained by plaintiffs. They relied solely on the judgment against Seminole. Defendant correctly contends that Cavaney or his estate cannot be held liable for the debts of Seminole without an opportunity to relitigate these issues. [Citations.] Cavaney was not a party to the action against the corporation, and the judgment in that action is therefore not binding upon him. . . ."

I dissent from any implication that *mere professional activity by an attorney at law, as such,* in the organization of a corporation, can constitute any basis for a finding that the corporation is the attorney's *alter ego* or that he is otherwise personally liable for *its* debts, whether based on contract or tort. That in such circumstances an attorney does not incur any personal liability for debts of the corporation remains true whether or not the attorney's professional services include the issuance to him of a qualifying share of stock, the attendance at and participation in an organization meeting or meetings, the holding and exercise for such preliminary purposes, in the course of his professional services, of an office or offices, whether secretary or treasurer or presiding officer or any combination of offices in the corporation.

The acts and services performed in *organizing* a corporation do not constitute the carrying on of business *by a corporation.* In this respect a corporation cannot properly be regarded as organized and ready to even begin carrying on business until at least qualifying shares of stock have been issued, a stockholders' meeting held, by-laws adopted and directors and officers elected. Furthermore, a permit from the Commissioner of Corporations must have been secured and minimum requirements of that agency met before the corporation can secure assets for which its stock may issue (possibly to be impounded

on conditions) and without which it cannot (at least normally) commence business. The scope of a lawyer's services in corporate organization may often include advice and direction as to the legal architecture of financial structures but does not, as such, encompass responsibility for securing assets.

In the process of developing an idea of a person or persons into an embryonic corporation and finally to full legal entity status with a permit issued, directors and officers elected, and assets in hand ready to begin business, there may often be delays. In such event a qualifying share of stock may stand in the name of the organizing attorney for substantial periods of time. In none of the activities indicated is the corporation actually engaging in business. And the lawyer who handles the task of determining and directing and participating in the steps appropriate to transforming the idea into a competent legal entity *ready to engage in business* is not an *alter ego* of the corporation. By his professional acts he has not been engaging in business in the name of the corporation; he has been merely practicing law.

McComb, J., concurred.

Respondents' petition for a rehearing was denied October 4, 1961.