Keating, J.
(dissenting). The defendant Carlton, the shareholder here sought to be held for the negligence of the driver of a taxicab, was a principal shareholder and organizer of the defendant corporation which owned the taxicab. The corporation was one of 10 organized by the defendant, each containing *422 two cabs and each cab having the “ minimum liability ” insur--anee coverage mandated by section 370 of the Vehicle and Traffic Law. The sole assets of these operating corporations are the vehicles themselves and they are apparently subject to mortgages.*
From their inception these corporations were intentionally undercapitalized for the purpose of avoiding responsibility for acts which were bound to arise as a result of the operation of a large taxi fleet having cars out on the street 24 hours a day and engaged in public transportation. And during the course of the corporations’ existence all income was continually drained out of the corporations for the same purpose.
The issue presented by this action is whether the policy of this State, which affords those desiring to engage in a business enterprise the privilegie of limited liability through the use of the corporate device, is .so strong that it will permit that privilege to continue no matter how much it is abused, no matter how irresponsibly the corporation is operated, no matter what the cost to the public. I do not believe that it is.
Under the circumstances of this case the shareholders should all be held individually liable to this plaintiff for the injuries he suffered. (See Mull v. Colt Co., 31 F. R. D. 154, 156; Teller v. Clear Serv. Co., 9 Misc 2d 495.) At least, the matter should not be disposed of on the pleadings by a dismissal of the complaint. “If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts. It is coming to be recognized as the policy of law that shareholders should in good faith put at the risk of the business unincumbered capital reasonably adequate for its prospective liabilities. If capital is illusory or trifling compared with the business to be done and the risks *423 of loss, this is a ground for denying the separate entity privilege.’’ (Ballantine, Corporations [rev. ed., 1946], § 129, pp. 302-303.)
In Minton v. Cavaney (56 Cal. 2d 576) the Supreme Court of California had occasion to discuss this problem in a negligence case. The corporation of which the defendant was an organizer, director and officer operated a public swimming pool. One afternoon the plaintiffs’ daughter drowned in the pool as a result of the alleged negligence of the corporation.
Justice Roger Tbavetor, speaking for the court, outlined the applicable law in this area. ‘ ‘ The figurative terminology ‘ alter ego ’ and ‘ disregard of the corporate entity ’ ”, he wrote, “ is generally used to refer to the various situations that are an abuse of the corporate privilege * * * The equitable owners of a corporation, for example, are personally liable when they treat the assets of the corporation as their own and add or withdraw capital from the corporation at will * * *; when they hold themselves out as being personally liable for the debts of the corporation * * *; or when they provide inadequate capitalization and actively participate in the conduct of corporate affairs ”. (56 Cal. 2d, p. 579; italics supplied.)
Examining the facts of the case in light of the legal principles just enumerated, he found that “ [it was] undisputed that there was no attempt to provide adequate capitalization. [The corporation] never had any substantial assets. It leased the pool that it operated, and the lease was forfeited for failure to pay the rent. Its capital was ‘ trifling compared with the business to be done and the risks of loss ’ ”. (56 Cal. 2d, p. 580.)
It seems obvious that one of "the risks of loss” referred to was the possibility of drownings due to the negligence of the corporation. And the defendant’s failure to provide such assets or any fund for recovery resulted in his being held personally liable.
In Anderson v. Abbott (321 U. S. 349) the defendant shareholders had organized a holding company and transferred to that company shares which they held in various national banks in return for shares in the holding company. The holding company did not have sufficient assets to meet the double liability requirements of the governing Federal statutes which provided that the owners of shares in national *424 banks were personally liable for corporate obligations “ to the extent of tbe amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares ” (U. S. Code, tit. 12, former § 63).
The court had found that these transfers were made in good faith, that other defendant shareholders who had purchased shares in the holding company had done so in good faith and that the organization of such a holding company was entirely legal. Despite this finding, the Supreme Court, speaking through Mr. Justice Douglas, pierced the corporate veil of the holding company and held all the shareholders, even those who had no part in the organization of the corporation, individually responsible for the corporate obligations as mandated by the statute.
“ Limited liability ”, he wrote, “ is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted. But there are occasions when the limited liability sought to be obtained through the corporation will be qualified or denied. Mr. Justice Caedozo stated that a surrender of that principle of limited liability would be made ‘ when the sacrifice is essential to the end that some accepted public policy may be defended or upheld. ’ * * * The cases of fraud make up part of that exception * * * But they do not exhaust it. An obvious inadequacy of capital, measured by the nature and magnitude of the corporate undertaking, has frequently been an important factor in cases denying stockholders their defense of limited liability * * * That rule has been invoked even in absence of a legislative policy which undercapitalisation would defeat. It becomes more important in a case such as the present one where the statutory policy of double liability will be defeated if impecunious bank-stock holding companies are allowed to be interposed as non-conductors of liability. It has often been held that the interposition of a corporation will not be allowed to defeat a legislative policy, whether that was the aim or only the result of the arrangement * * * < the courts will not permit themselves to be blinded or deceived by mere forms of law ’ but will deal ‘ with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.’ ” (321 U. S., pp. 362-363; emphasis added.)
*425 The policy of this State has always been to provide and facilitate recovery for those injured through the negligence of others. The automobile, by its very nature, is capable of causing severe and costly injuries when not operated in a proper manner. The great increase in the number of automobile accidents combined with the frequent financial irresponsibility of the individual driving the car led to the adoption of section 388 of the Vehicle and Traffic Law which had the effect of imposing upon the owner of the vehicle the responsibility for its negligent operation. It is upon this very statute that the cause of action against both the corporation and the individual defendant is predicated.
In addition the Legislature, still concerned with the financial irresponsibility of those who owned and operated motor vehicles, enacted a statute requiring minimum liability coverage for all owners of automobiles. The important public policy represented by both these statutes is outlined in section 310 of the Vehicle and Traffic Law. That section provides that: “The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them.”
The defendant Carlton claims that, because the minimn-m amount of insurance required by the statute was obtained, the corporate veil cannot and should not be pierced despite the fact that the assets of the corporation which owned the cab were “ trifling compared with the business to be done and the risks of loss ’ ’ which were certain to be encountered. I do not agree.
The Legislature in requiring minimum liability insurance of $10,000, no doubt, intended to provide at least some small fund for recovery against those individuals and corporations who just did not have and were not able to raise or accumulate assets sufficient to satisfy the claims of those who were injured as a result of their negligence. It certainly could not have intended to shield those individuals who organized corporations, with the specific intent of avoiding responsibility to the public, where the operation of the corporate enterprise yielded profits sufficient to purchase additional insurance. Moreover, it is rea *426 sonable to assume that the Legislature believed that those individuals and corporations having substantial assets would take out insurance far in excess of the minimum in order to protect those assets from depletion. Given the costs of hospital care and treatment and the nature of injuries sustained in auto collisions, it would be unreasonable to assume that the Legislature believed that the minimum provided in the statute would in and of itself be sufficient to recompense “innocent victims of motor vehicle accidents * * * f or the injury and financial loss inflicted upon them ’ ’.
The defendant, however, argues that the failure of the Legislature to increase the minimum insurance requirements indicates legislative acquiescence in this scheme to avoid liability and responsibility to the public. In the absence of a clear legislative statement, approval of a scheme having such serious consequences is not to be so lightly inferred.
The defendant contends that the court will be encroaching upon the legislative domain by ignoring the corporate veil and holding the individual shareholder. This argument was answered by Mr. Justice Douglas in Anderson v. Abbot (supra, pp. 366-367) where he wrote that: “ In the field in which we are presently concerned, judicial power hardly oversteps the bounds when it refuses to lend its aid to a promotional project which would circumvent or undermine a legislative policy. To deny it that function would be to make it impotent in situations where historically it has made some of its most notable contributions. If the judicial power is helpless to protect a legislative program from schemes for easy avoidance, then indeed it has become a handy implement of high finance. Judicial interference to cripple or defeat a legislative policy is one thing; judicial interference with the plans of those whose corporate or other devices would circumvent that policy is quite another. Once the purpose or effect of the scheme is clear, once the legislative policy is plain, we would indeed forsake a great tradition to say we were helpless to fashion the instruments for appropriate relief.” (Emphasis added.)
The defendant contends that a decision holding him personally liable would discourage people from engaging in corporate enterprise.
*427 What I would merely hold is that a participating shareholder of a corporation vested with a public interest, organized with capital insufficient to meet liabilities which are certain to arise in the ordinary course of the corporation’s business, may be held personally responsible for such liabilities. Where corporate income is not sufficient to cover the cost of insurance premiums above the statutory minimum or where initially adequate finances dwindle under the pressure of competition, bad times or extraordinary and unexpected liability,, obviously the shareholder will not be held liable (Henn, Corporations, p. 208, n.7).
The only types of corporate enterprises that will be discouraged as a result of a decision allowing the individual shareholder to be sued will be those such as the one in question, designed solely to abuse the corporate privilege at the expense of the public interest.
For these reasons I would vote to affirm the order of the Appellate Division.
Chief Judge DesmoNd arid Judges Yaw Voorhis, Burke and Scileppi concur with Judge Fuld; Judge KeatiNg dissents and votes to affirm in an opinion in which Judge BergaN concurs.
Order reversed, etc.

 It appears that the medallions, which are of considerable value, are judgment proof. (Administrative Code of City of New York, § 436-2.0.)