[No. D003646. Fourth Dist., Div. One. Sept. 17, 1987.]

NEPTUNE SOCIETY CORPORATION et al., Plaintiffs, Cross-defendants and Appellants, v.
L. CALVIN LONGANECKER et al., Defendants, Cross-complainants and Respondents;
CHARLES H. DENNING, JR., et al., Cross-defendants and Appellants.

1234

COUNSEL

James McKiernan for Plaintiffs, Cross-defendants and Appellants and for Cross-defendants and Appellants.

Richard E. Gattis and Steven J. Coté for Defendants, Cross-complainants and Respondents.

OPINION

**TODD, J.**—In this contract action and cross-complaint for rescission stemming from a partnership agreement that went sour, the trial court, after an 18-day court trial, made a series of rulings against the plaintiff. Judgment was entered for the defendant and cross-complainant for rescission, restitution, dissolution of the partnership and attorney's fees. Plaintiff and cross-defendants appeal.

### THE PARTIES

The plaintiff is Neptune Society Corporation, a California corporation, which sued L. Calvin Longanecker, his wife and Leneta Corporation, a California corporation formed by Longanecker in 1977. Longanecker and Leneta filed a cross-complaint against Neptune Society Corporation; Proteus, Inc. (Proteus), a Delaware corporation; Charles H. Denning, Jr., and Barbara H. Denning. Proteus was added as a party plaintiff at the conclusion of the trial.

### FACTS AND PROCEDURAL BACKGROUND

On August 3, 1974, Longanecker and his former wife Neta entered into an "Agreement of Limited Partnership" with Proteus, doing business as Neptune Society. Charles H. Denning, Jr., was the purported president of Proteus and was the promoter and negotiator for the partnership agreement on behalf of Proteus. The purpose of the agreement was to start Neptune Society of San Diego, a business to provide low cost crematory services, as well as dissemination of the remains of San Diego County residents. The first Neptune office had been opened in San Pedro in June 1973 to service the Los Angeles area. At the time Longanecker entered into the agreement, there were also Neptune offices in San Francisco, Orange County and Santa Barbara.

Under the agreement, Longanecker agreed to pay to Proteus the sum of $45,000. Longanecker executed three promissory notes, each dated August

3, 1974, payable in the sum of $1,000, $4,000 and $40,000 respectively to the order of the Neptune Society, due and payable, first, within seven days for the $1,000, second, within thirty-five days for the $4,000, and, third, within three years for the $40,000. Longanecker also agreed to pay to Proteus 10 percent of the gross income of the new business. (Later, Longanecker and Proteus, through its agent Denning, modified the agreement to entitle Proteus to a flat rate royalty schedule of $1.50 per individual memberships, $2.50 for family memberships, $25 per member death cases and $30 for nonmember death cases.)

In return for the promissory notes and the payment of royalties, Proteus agreed to perform various services in furtherance of the new business, including training Longanecker's employees, providing promotional services and market research assistance, and providing facilities and services to disseminate ashes at sea. Longanecker, in turn, received the exclusive right to operate a Neptune Society business in San Diego County.

Neptune Society of San Diego opened for business in September 1974. On August 7, 1975, the Neptune Society Corporation was formed by Denning. On June 23, 1976, Denning wrote Longanecker that the agreement had been transferred from ". . . Proteus Corp which I own 100% . . . to the Neptune Corp which I own."

In August 1977, Longanecker stopped making his royalty payments because of purported longstanding and continuing breaches by Proteus/Neptune Society Corporation of its obligations under the agreement. In February 1978, the Neptune Society Corporation sued Longanecker to collect the sums due under the $40,000 note and to collect unpaid royalties due. On March 29, 1978, Longanecker filed a cross-complaint for rescission, restitution, dissolution of partnership and declaratory relief.

Trial commenced on December 3, 1984, on Neptune Society Corporation's third amended complaint and Longanecker's cross-complaint and concluded on January 23, 1985, when the trial court ruled (1) the agreement was a "franchise" as that term is used in the state Franchise Investment Law (Corp. Code, § 31000 et seq.)—a finding that is not questioned on appeal—(2) Neptune Society Corporation had willfully violated the law by not registering the franchise and Longanecker was entitled to rescission, (3) Neptune Society Corporation was not entitled to recover for breach of contract because of its prior material breach of the agreement (failure to provide ongoing market research, among other things), (4) Longanecker is entitled to restitution of $19,000 he paid in royalties and $5,000 he paid in notes to Neptune Society Corporation, (5) Neptune Society Corporation is entitled to be reimbursed for the value of its contributions, including the use

of the name Neptune Society, in the sum of $25,000, (6) Longanecker and his successors-in-interest will have the right to use the Neptune Society name in San Diego County and (7) each side is to pay its own attorney's fees. At a hearing on March 27, 1985, the trial court reversed itself on the last issue, ruling Longanecker is entitled to attorney's fees.

In its July 17, 1985, statement of decision, the trial court also found Neptune Society Corporation did not have standing to bring its lawsuit against Longanecker. The trial court rejected Neptune Society Corporation's claim that it was the lawful assignee of Proteus.

## DISCUSSION

As best we can ascertain, Neptune Society Corporation makes the following contentions: (1) the trial court's admission of evidence concerning a $90,000 loan made by the Small Business Administration to Proteus in 1973 deprived Neptune Society Corporation of a fair and unbiased trial; (2) the evidence did not support the trial court's finding that Neptune Society Corporation was not the lawful assignee of Proteus; (3) the one-year statute of limitations provided in Corporations Code section 31303 precludes Longanecker from rescinding the agreement for willful failure to register a franchise; (4) the evidence did not support the trial court's finding that Neptune Society Corporation willfully violated the Franchise Investment Law; (5) trial court's finding of rescission based on fraud is defective; (6) the trial court did not properly order restitution and restoration between the parties after rescission of the agreement; (7) the evidence did not support the trial court's finding that Charles H. Denning, Jr., and Barbara H. Denning violated the Franchise Investment Law; (8) the trial court committed prejudicial error by excluding evidence during Neptune Society Corporation's case-in-chief; and (9) the trial court erred in awarding attorney's fees to Longanecker.

## I

■■■ Neptune Society Corporation complains throughout its brief that it was highly prejudiced and denied a fair trial because the trial court insisted on exploring Proteus's questionable Small Business Administration loan. Neptune Society Corporation had a continuing relevancy objection to the evidence concerning the loan.

At the outset, the loan evidence should be put in perspective in relationship to the entire trial. The trial was originally estimated to take five days. In fact, there were 18 days of trial over a 2-month period, which was broken up by holidays and other commitments by counsel on both sides, as well as

the court. It is true that at the court's direction a number of witnesses were brought in to testify about the loan, but the testimony of these unexpected witnesses took up only two days of court time. Also, it is important to recognize the trial court was prompted to look into the loan by Denning's testimony, which throughout the trial was simply incredible. Denning at various points claimed he had documentary evidence of purported transactions, but the documents were destroyed by either a flood at one property or a fire at another. Later, he was able to find some documents helpful to his case that were contemporaneous to those destroyed by the fire or flood.

■ A trial court has wide discretion in deciding relevancy. (*People* v. *Warner* (1969) 270 Cal.App.2d 900, 908 [76 Cal.Rptr. 160].) Evidence is relevant not only when it tends to prove or disprove the precise fact in issue but when it tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. (*Ibid.*)

Longanecker presented evidence that Proteus had been transferred to Denning's stepdaughter so the firm could qualify for a loan from the Small Business Administration. Denning testified his stepdaughter's purchase of Proteus was a sham concocted by his associate Volney Stefflere to defraud the Small Business Administration into making a minority enterprise small business investment corporation (MESBIC) loan to Proteus. The stepdaughter is one-half Indonesian. Denning also claimed the stepdaughter's purchase of Proteus was never consummated because the MESBIC loan was never made to Proteus. Longanecker's counsel, however, uncovered evidence that a $90,000 MESBIC loan was made to a d.b.a. of Proteus in July 1973. A Small Business Administration auditor testified that Denning told him how the loan money was spent, and Denning did not dispute the auditor's testimony. Instead, Denning testified that Stefflere, the supposed mastermind of the scam, had told him to lie to the auditor about the use of the loan proceeds and he, Denning, had merely followed Stefflere's instructions.

In its statement of decision, the trial court concluded, among other things, that Neptune Society Corporation was not the lawful assignee of Proteus based on the following evidence: ". . . PROTEUS became indebted to the Small Business Administration (SBA) under a MESBIC loan in the principal sum of $90,000.00 in or about July/August 1973. This loan has never been repaid nor assumed by NEPTUNE. NEPTUNE may not be permitted to claim it was the lawful assignee of PROTEUS' assets and concurrently claim that it did not assume its obligations. Moreover, the only evidence concerning the alleged assignment of the Agreement was from the oral testimony of Cross-Defendant Charles H. Denning. Mr. Denning claimed he became the sole owner of PROTEUS in or prior to June 1973 and was the

sole owner of NEPTUNE at the time of the alleged assignment. He further claimed that he transferred the assets of PROTEUS , which he owned, including the Agreement, to NEPTUNE , but that all records of the Assignment were lost in either a flood or a fire. However, Mr. Denning's entire testimony must be viewed with distrust and considered wholly unreliable because of numerous instances of inconsistent, evasive or false testimony throughout the trial. In addition, the evidence clearly establishes that Mr. Denning did not have any propriety interest in PROTEUS at the time of the alleged assignment. In fact, Mr. Denning admitted to an investigator of the SBA in December 1973 that he held no propriety interest in PROTEUS. Accordingly, there is no credible evidence of an assignment of the assets of PROTEUS to NEPTUNE , including the Agreement." This finding was amply supported by the trial record. ■■■ It is overwhelmingly clear that evidence concerning the loan was relevant to the issue of standing and the validity of the assignment, as well as to the impeachment of Denning. A recount of Denning's testimony concerning the loan indicates that the trial court did not abuse its discretion in its exploration of the loan circumstances.

## II

■■■ Neptune Society Corporation contends it has proven it is the assignee and present holder of Proteus's right to proceed against Longanecker because it is the only party seeking to enforce its contract rights against Longanecker. Neptune Society Corporation points to (1) the fact that Longanecker at all times—before, during and after the agreement—dealt primarily with Denning, (2) the fact that Longanecker made his promissory notes payable to the Neptune Society and his royalty checks payable to Neptune Society and (3) Longanecker's addendum to the promissory note, executed on April 19, 1977, was a specific promise by Longanecker to pay the Neptune Society Corporation.

In *Cockerell* v. *Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292 [267 P.2d 16], our Supreme Court held: ■■■ "The burden of proving an assignment falls upon the party asserting rights thereunder [citations]. In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when the fact is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee [citation]."

■■■ Neptune Society Corporation has not met its burden. The only evidence it produced that an assignment was made was Denning's testimony he orally transferred the contract rights from Proteus to Neptune Society Corporation as sole owner of the two corporations. Moreover, it was never

clearly demonstrated at trial that Denning had the authority to make the alleged assignment. In *Cockerell, supra,* 42 Cal.2d 284, the Supreme Court noted the need to show proper authorization for an assignment of rights. (*Id.* at p. 292.) Introduced at trial here was testimony given by Denning's stepdaughter in another proceeding that Proteus had been transferred to her so the firm could qualify for a minority loan from the Small Business Administration, as well as the executed agreements that the stepdaughter signed. A Small Business Administration auditor testified that Denning denied during a December 7, 1973, audit any ownership in Proteus.

Finally, Neptune Society Corporation's reliance on Longanecker's treatment of it as though it were the valid assignee is misplaced. Longanecker's actions in this regard were a result of Denning's representation as reflected in his June 23, 1976, letter. The fact Longanecker recognized Neptune Society Corporation as the assignee does not in any manner mean an assignment took place.

The trial court's conclusion that Neptune Society Corporation did not meet its burden of proving a lawful and valid assignment of the contract rights is substantially supported by the evidence.

### III

██ Neptune Society contends a one-year statute of limitations contained in Corporations Code section 31303 bars Longanecker from seeking civil liability under Corporations Code section 31300. Neptune Society bases its argument for a one-year statute of limitations on its contention Longanecker "was put on notice and had discovered 'the fact constituting the violation' in August of 1974." Longanecker counters he had merely discovered fraud on the part of Denning, not the violation of the state Franchise Investment Law.

We need not concern ourselves with whether Longanecker had in fact discovered a violation of the Franchise Investment Law more than one year before he filed his cross-complaint. Nor need we deal at length with the statute of limitations issue.

██ "It is blackletter law that the defense of the statute of limitations is a personal privilege which must be affirmatively invoked in the lower court by appropriate pleading (if the defense appears on the face of the complaint, it must be raised by demurrer; otherwise it must be specially pleaded in the answer) or is waived [citations]." (*O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 156 [119 Cal.Rptr. 245].) ██ Here, Neptune Society Corporation failed to plead the defense of statute of limitations in its answer to the cross-

complaint and did not raise it as a ground of a general demurrer.[1] The defense was therefore waived. (*Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) Longanecker was not barred from seeking civil liability under Corporations Code section 31300.

## IV

■ Neptune Society Corporation contends the evidence presented at trial does not support a finding that it "willfully" violated the state Franchise Investment Law.

Corporations Code section 31110 provides: "On and after April 15, 1971, it shall be unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this part or exempted under Chapter 1 (commencing with Section 31100) of this part." The trial court found the agreement was a franchise agreement and required registration under Corporations Code section 31110. Furthermore, the trial court found the failure to register was a willful violation.

A willful violation entitles the franchisee to sue for rescission, in addition to damages. (Corp. Code, § 31300.)

There is ample evidence to support the trial court's finding that the failure to register pursuant to Corporations Code section 31110 was a willful violation. Denning in 1973 had consulted an attorney, who recommended against franchising because of the paperwork requirements. Exhibit 056, a document produced by Neptune Society Corporation, discussed the marketing of the Neptune Society concept, including the sale of franchises as a way of generating extra revenue quickly. A prospectus given to Longanecker during the negotiations in the summer of 1974 specifically referred to the agreement as a "Franchise Agreement." John Leggett, one of the original employees of Proteus, testified Denning knew the business was a franchise. The Small Business Administration auditor testified Denning told him in December 1973 he had hoped to establish franchise offices throughout the country, with Neptune Society becoming the "McDonald's of the burial at sea business."

Under the facts of this case, Longanecker was entitled to rescission of the agreement under Corporations Code section 31300 because of a willful violation of Corporations Code section 31110.

---

[1] Neptune Society Corporation did not raise the defense of the statute of limitations until its motion for a new trial.

## V

Neptune Society Corporation objects to paragraph 15 of the trial court's statement of decision, which states: "LONGANECKER and LENETA are further entitled to rescind the Agreement pursuant to Civil Code § 1689(b)(1) because LONGANECKER 's consent to the Agreement was obtained through fraud. The fraud consisted of several false and misleading representations contained in a prospectus used by DENNING on behalf of PROTEUS to induce LONGANECKER to enter into the Agreement. DENNING admitted in his testimony that the representations in the prospectus were false and would have been misleading if relied upon. LONGANECKER justifiably relied upon the false representations thereby entitling LONGANECKER and LENETA to rescind the Agreement." ■ Neptune Society Corporation contends the trial court's failure to articulate this alternative basis for rescission when it orally announced its decision on January 23, 1985, precludes this finding. Neptune Society Corporation is wrong.

California Rules of Court, rule 232 provides in pertinent part: "On the trial of a question of fact by the court, the court shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. . . . [¶] The tentative decision shall not constitute a judgment and shall not be binding on the court. If the court subsequently modifies or changes its announced tentative decision, the clerk shall mail a copy of the modification or change to all parties who appeared at trial."

## VI

■ Neptune Society Corporation contends the trial court erred by not restoring to it the right to use the name Neptune Society. Neptune Society Corporation points out that rescission requires the restoration of everything of value received from the other side. (See Civ. Code, § 1691.)

Neptune Society Corporation argues that since Proteus was operating viable Neptune offices throughout the state before it and Longanecker entered into the agreement, the name Neptune belonged to it and upon rescission should be restored to it. However, it is not at all clear that the Neptune name was something of value bestowed upon Longanecker by Proteus. There was no evidence that Proteus, Denning or Neptune Society Corporation registered the name Neptune Society as a trademark. The agreement merely provided: "The name of the firm under which said partnership is to be conducted is NEPTUNE SOCIETY OF SAN DIEGO." There was no express provision to grant, assign or sell any name to the partnership. ■ Upon dissolution of a commercial partnership, the general rule is the succeeding

partner has the right to carry on the business under the old name in the absence of a stipulation forbidding it. (*Speka* v. *Speka* (1954) 124 Cal.App.2d 181, 190 [268 P.2d 129].)

The trial court found Longanecker was primarily responsible for the goodwill and value of the name Neptune Society in San Diego County. The trial court further found justice required Longanecker and his successors-in-interest continue to have the right to use the name. The trial court, however, did not disregard the contribution Proteus, Denning and Neptune Society Corporation made to enhance the name Neptune Society. Accordingly, the trial court awarded Neptune Society Corporation $25,000 for its contribution in this regard.

In *Driskill* v. *Thompson* (1956) 141 Cal.App.2d 479 [296 P.2d 834], the plaintiff entered into an oral partnership agreement with two other individuals to operate a dance hall, with each partner required to perform various functions. After nearly two years in business, the plaintiff dissolved the partnership and took possession of the physical assets of the business, which he continued to operate. The court awarded the other partners the monetary value of their percentage share of the partnership assets, including the good will of the ongoing business. Here, the trial court endeavored to treat Neptune Society Corporation similarly by awarding it $25,000 as restoration of the value of its contributions to the value of the dissolved partnership's name and goodwill.

■ Even assuming arguendo that Proteus had contributed the Neptune name as something of value—as opposed to the partnership merely adopting the name—it was within the trial court's discretion to "adjust the equities between the parties." (See Civ. Code, § 1692.)

In discussing rescission awards in *Runyan* v. *Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316 [85 Cal.Rptr. 138, 466 P.2d 682, 41 A.L.R.3d 1422], our Supreme Court observed: ■ "The fundamental principle underlying these decisions and the awards which they upheld is that 'in such actions the court should do complete equity between the parties' and to that end 'may grant any monetary relief necessary' to do so. [Citation.] It is the purpose of rescission 'to restore both parties to their former position as far as possible' [citation] and 'to bring about substantial justice by adjusting the equities between the parties' despite the fact that 'the status quo cannot be exactly reproduced.' [Citation.] As the court said in *Greenbach* 'concurrent with the award of rescission, the trial court may award money damages or order such other relief as justice may require.' (98 Cal.App.2d at p. 238.)"

Here, there was substantial evidence that Longanecker made prodigious efforts to promote the Neptune name in San Diego County and that whatever value the name had in the county was largely a result of those efforts. Thus, sound equitable principles support the trial court's decision allowing Longanecker to retain the name while providing monetary compensation to Neptune Society corporation. Using equitable principles, the trial court properly exercised its discretion to resist restoration where it would seriously injure a party. (See *California etc. Co.* v. *Schiappa-Pietra* (1907) 151 Cal. 732, 740 [91 P. 593].)

## VII

Neptune Society Corporation contends there is insufficent evidence to support imposition of personal liability upon Charles H. Denning and Barbara H. Denning for violation of the state Franchise Investment Law.

Corporations Code section 31302 provides: "Every person who directly or indirectly controls a person liable under Section 31300 or 31301, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which liability is alleged to exist." Corporations Code section 31015 provides: " 'Person' means an individual, corporation, a partnership, a joint venture, an association, a joint stock company, a trust or an unincorporated organization."

The trial court found Charles and Barbara Denning jointly and severally liable to Longanecker since they directly or indirectly controlled Proteus and/or were employees of Proteus materially aiding in the act that constituted the violation of Corporations Code section 31300—the offering for sale and sale of an unregistered franchise.

As to Charles Denning, we need only to refer to section IV of this opinion to conclude that he did not fall within the "no knowledge" exemption contained in Corporations Code section 31302. The trial court was correct in finding him jointly and severally liable.

As to Barbara Denning's joint and several liability, Neptune Society Corporation argues the record is "completely silent on any knowledge or involvement of BARBARA DENNING on the franchise issue altogether." At first glance, this argument seems meritorious, for under it she would appear

to fall within the "no knowledge" exemption. The evidence concerning Barbara Denning was skimpy: She was present when Denning offered the agreement to Longanecker in August 1973, and she was an officer (secretary) of the corporation. It cannot be said, however, that the evidence as a matter of law establishes that Barbara Denning had no knowledge or reasonable grounds to believe Proteus was selling an unregistered franchise.

She has the burden of proving she had no knowledge or reasonable grounds to believe that Proteus was selling an unregistered franchise. (*Eastwood* v. *Froehlich* (1976) 60 Cal. App.3d 523, 531 [131 Cal.Rptr. 577].) She was a corporate officer. Lack of knowledge or reasonable grounds to believe is an exemption to the liability imposed on corporate officers such as Barbara Denning. The burden of proof rested upon her to invoke the exemption. Here, absent proof sufficient to sustain this burden, the trial court properly determined the matter adversely to Barbara Denning as well as Charles Denning. (*Id.* at p. 523.)

## VIII

■ Neptune Society Corporation contends the trial court's exclusion of videotaped interviews of Denning used to promote the Neptune name was improper and prejudicial. When Neptune sought to introduce the videotapes during its case-in-chief, the trial court excluded them because they were made after August 1977, when the performance of the agreement ended. Hence, the trial court deemed their timing made them irrelevant. Later, the trial court—over Neptune Society Corporation's objection—allowed the introduction of brochures and materials that were produced outside the time of performance of the agreement. The trial court then offered to entertain a request by Neptune to introduce the earlier rejected videotapes, but Neptune declined.

Evidence Code section 354 provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the question asked, an offer of proof, or by any other means; [¶] (b) The rulings of the court made compliance with subdivision (a) futile; or [¶] (c) The evidence was sought by questions asked during cross-examination or recross-examination."

It is immaterial to this appeal whether the exclusion of the videotapes was error or whether the trial court's later invitation to present the evidence

cured the purported error. For under Evidence Code section 354, it is clear the standard for reversal for exclusion of evidence is miscarriage of justice. (See Cal. Const., art. VI, § 13.) Neptune Society Corporation has not shown in any way how the introduction of the videotapes would have affected the trial court's rulings concerning the violation of the state Franchise Investment Law. There was no prejudice.

## IX

Finally, Neptune Society Corporation contends the trial court erred in awarding attorney's fees to Longanecker.

A party is generally precluded from recovery of attorney's fees, except where attorney's fees are specifically authorized by agreement or statute. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 127-128 [158 Cal.Rptr. 1, 599 P.2d 83].) Civil Code section 1717 provides in pertinent part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Where a contract provides for attorney's fees, as set forth above, such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

"Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"(b) (1) The court, upon notice and motion by a party, shall determine who is the prevailing party, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the prevailing party shall be the party who is entitled to recover costs of suit." "Section 1717 was enacted to transform a unilateral contract right to attorney's fees into a reciprocal provision. As a statutory modification of unilateral attorneys' fees provisions, section 1717 was designed to accomplish mutuality of reme-

dy." (*Smith* v. *Krueger* (1983) 150 Cal.App.3d 752, 756 [198 Cal.Rptr. 174].)

 Here, the original $40,000 promissory note (as well as an addendum to the promissory note) provides for the payment of attorney's fees in the event action is instituted on the notes. The original note, dated August 3, 1974, stated: "[I]n case suit is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable attorney's fees in said suit." The addendum to the promissory note dated April 18, 1977, stated: "Should suit be commenced to collect this note or any portion thereof, such sum as the court may deem reasonable shall be added hereto as attorney's fees." Neither side was represented by counsel in the negotiation and execution of the contract. Since the promissory notes were inherent parts of the agreement, which is the subject matter of the litigation, the attorney's fees provisions are properly construed as applying to the entire contract. (Civ. Code, § 1717, subd. (a).)

In its statement of decision, the trial court based its award of attorney's fees on its findings the agreement contained an attorney's fee provision entitling the prevailing party to reasonable attorney's fees and Longanecker was the prevailing party.

It is abundantly clear Longanecker was the prevailing party on both the complaint and cross-complaint. He successfully defended the complaint and successfully prosecuted the cross-complaint, and judgment was rendered in his favor on both. A trial court is required under Civil Code section 1717 to award reasonable attorney's fees to the prevailing party in a lawsuit on a contract which contains an attorney's fees provision. (*Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778, 786 [191 Cal.Rptr. 8, 661 P.2d 1088]; *Smith* v. *Krueger, supra,* 150 Cal.App.3d 752.) The trial court's award of attorney's fees to Longanecker was proper.

 Besides contending neither party was a prevailing party under Civil Code section 1717, Neptune Society Corporation argues the trial court erroneously awarded attorney's fees on the basis Longanecker had made an offer to settle which was rejected.

At the March 27, 1985, hearing, the trial court said it was persuaded to reconsider the issue of attorney's fees by an argument by Longanecker's counsel that the entire litigation could have been avoided had Neptune Society Corporation accepted an offer made by Longanecker in 1978. The trial court observed: ". . . I did not take into account something that was before the court and I should have taken that into account, and that was the offer in the beginning made by Mr. Denning—excuse me, made by Mr.

Longanecker to Mr. Denning concerning a settlement, in effect. And if that had been accepted, then both parties would have been spared a great deal of money."

The statement of decision, however, did not refer to Longanecker's purported settlement offer as a basis for the award of attorney's fees. We share some of Neptune Society Corporation's skepticism that Longanecker's January 27, 1978, letter, which appears to be a proposal to buy the Neptune name for $20,000, was a settlement offer since there was no litigation at that time. At any rate, it does not supply a legal basis to award attorney's fees. However, the reason cited by the trial court in its statement of decision— the agreement contained an attorney's fees provision and Longanecker was the prevailing party—is in accord with *Christensen* v. *Dewor Developments, supra,* 33 Cal.3d 778, and *Smith* v. *Krueger, supra,* 150 Cal.App.3d 752. Accordingly, the award of attorney's fees was proper.

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Work, J., concurred.