OPINION
HOWARD, Judge.
Appellee sued KEP, Inc., an Arizona corporation and the individual appellants for money due and owing on an open account for agricultural chemicals, fertilizers and other agricultural products. The trial court awarded judgment in appellee’s favor and against the individual appellants and KEP, Inc. for the balance due of $54,-305.93. Appellants contend the trial court erred in holding them personally liable for a corporate debt. We agree.
KEP, Inc., organized in 1971, purchased in that year 1,120 acres of deeded land and a state lease of 3,690 acres of land. Prior to 1975 all the land was leased to someone else but thereafter KEP did its own farming on the land. It had sufficient water, however, to farm only 42 per cent of the land. Portions of the land were planted in cotton and grain. The corporation also owned some farm machinery and had a few other assets.
Joe Ingram was the secretary of the corporation and was general manager of the farming operation. Charles Piercey, now deceased, was the president of the corporation, but was not actively engaged in the farming operation. The Ingrams owned 50 per cent of the shares of KEP and the Pierceys owned the other 50 per cent.
In 1978 and 1979 rains and floods resulted in bad crop losses and in 1981 the corporation was informed by Arizona Farmers Production Credit Association that it would not advance any more monies as it had in the past in order to finance the crops or help pay for bills. This caused KEP to borrow money from other sources and, as security, give these sources mortgages on the land.
The corporation had heavy losses in 1979 which carried over into 1980. In 1981 there was a net profit on the crops which allowed KEP to make some payments on its past debts. KEP’s annual report for 1980 filed with the corporation commission showed the value of its land at $520,000, which was its book value, and total assets of $1,262,-991. It also showed that it had liabilities of $2,752,726.
In the annual report that it filed for 1981, KEP valued its land at market value instead of book value. This value was $1,634,000. Total assets were listed as $2,735,345.72 and total liabilities were $2,658,689.41.
There is nothing in the record which shows there were any mortgages on the land prior to the year 1979.
At trial, appellee’s expert witness valued KEP’s land as of the year 1982 at $2,167,-500. There was also testimony that the mortgages on the deeded and leased land exceeded the value of the land as appraised by appellee’s expert witness.
KEP’s open account with appellee began in 1978 and continued throughout 1981. Large amounts were charged during these years; however, large amounts were paid on the account. In 1981 KEP paid $50,000 to appellee, but there was still a large balance owing and appellee put KEP on a c.o.d. basis. Appellee was told its balance would be paid from the proceeds of an anticipated sale of the farm. An escrow was opened but after 18 months and no closing of the sale, appellee filed this lawsuit.
*546 Appellee’s theory in the trial court for holding the individuals liable as the alter ego of the corporation was based upon the theory of undercapitalization. It contended that the individuals had a continuing duty to contribute to the capital of the company to prevent it from becoming insolvent, and that when it did become insolvent this undercapitalization, coupled with the fact that the individuals knew that the corporation was insolvent, justified the trial court in piercing the corporate veil. The trial court agreed with this theory and made findings of fact which included the following:
“1. That as of November 1, 1981, and prior and subsequent thereto at the times Plaintiff sold the merchandise in question, Defendants Charles A. Piercey and Joe Ingram were President and Secretary respectively of Defendant Kep, Inc., and were its two primary shareholders.
2. That at the time Defendant Kep, Inc., purchased the merchandise in question from Plaintiff, Defendant Joe Ingram and Defendant Charles Piercey knew that Defendant Kep, Inc., had incurred serious and substantial financial difficulties and was unable to pay for this merchandise purchased from Plaintiff with a balance due of $54,-305.93 and that said Defendant Joe Ingram and Charles Piercey allowed Defendant Kep, Inc., to purchase said materials and merchandise from Plaintiff knowing that Defendant Kep, Inc., was unable to pay for said merchandise.
3. That at the time of the purchase of said merchandise Defendant Kep, Inc., had liabilities far in excess of its corporate assets and Defendants Charles Piercey and Joe Ingram were aware of the financial condition of Defendant Kep, Inc., at all times in question.” (Emphasis added)
Pursuant to the findings of fact the trial court made the following conclusions of law:
“1. That at the time Defendant Kep, Inc., purchased the said merchandise from Plaintiff, it was inadequately capitalized to pay its corporate liabilities and that Defendant Joe Ingram as Secretary and fifty (50%) percent shareholder and Defendant Charles Piercey as President and fifty (50%) percent shareholder were aware that Defendant Kep, Inc., was unable to pay its corporate obligations.
2. That the Defendants Ingram and Piercey at all times relevant to this lawsuit carried on the business of the corporate Defendant Kep, Inc., without assets sufficient to meet its debts thereby defrauding and prejudicing its creditors including the Plaintiff.
3. That the Defendants Ingram and Piercey conducted the business of the Defendant corporation, Kep, Inc., in a manner that there existed such a unity of interests and ownership that the separate personalities of the corporation and the individual Defendant owners ceased to exist.
4. That the financial structure of the Defendant Kep, Inc., was a sham and caused an injustice to the Plaintiff.”
Appellants first contend that the findings of fact are clearly erroneous. We agree. There is no evidence to support finding of fact No. 2. Merchandise was paid for. In 1978 $38,900.48 worth of materials were purchased from appellee and the sum of $21,865.08 was paid. In 1979 KEP paid $78,993.32 for goods purchased from appellee. In 1980 $65,000 was paid and in 1981 $54,041.47 was paid. This demonstrates that some of the merchandise was paid for and some of it was not paid for but does not support the conclusion that they purchased the merchandise knowing that they would be unable to pay for it.
As for finding of fact No. 3, using appellee’s figures, the record shows that in 1981 the assets of the corporation were approximately $3,268,745.72 and liabilities were $3,886,007.63. The record contains no evidence as to the amount of assets and liabilities for KEP in the years 1978 and 1979. Therefore, it appears that the statement that the liabilities were “far in excess of its corporate assets” during the times in question is greatly exaggerated if not clearly erroneous. There was no finding made by *547 the trial court that appellants purchased the merchandise from appellee without any intention to pay for it nor would the record support such a finding.
Appellee’s theory, which was followed by the trial court, is not the law and is based upon a misreading of the case upon which if? relied, Carlesimo v. Schwebel, 87 Cal.App.2d 482, 197 P.2d 167 (1948). That case stands for the proposition that the fact that a corporation is organized with obviously inadequate capital may be considered in determining whether the corporate entity should be disregarded. That is also the law in Arizona. See Ize Nantan Bagowa, Ltd. v. Scalia, 118 Ariz. 439, 577 P.2d 725 (App.1978). It does not stand for the proposition that if there was initially adequate capitalization, but, if as the corporation operates, its capitalization becomes inadequate, that the shareholders and officers must make a good faith effort at rectifying it or else be held personally liable for its debts. There are no cases which support this general proposition. A clear statement of the applicable law is found in Fletcher’s Cyclopedia, Corporations, Vol. 1, Ch. 2, § 44.1:
“If a corporation is organized and carries on a business without substantial capital in such a way that the corporation is likely to have insufficient assets available to meet its debts, it is inequitable that the stockholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibilities to creditors is an abuse of the separate entity and will be ineffectual to exempt the stockholders from corporate debts. It is coming to be recognized as the policy of the law that stockholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. If the capital is illusory or trifling compared with the business to be done and the risks of loss, this is ground for denying the separate entity privilege. It has been stated that a corporation’s capitalization is a major consideration of courts in deciding whether a legitimate separate corporate entity was maintained ...
* * * * * *
The adequacy of capital is to be measured as of the time of formation of the corporation. A corporation that was adequately capitalized when formed but which subsequently suffers financial reverses is not undercapitalized, [footnotes omitted]”
The rule that adequacy of capital is to be measured as of the time of formation of the corporation is found in the case of J-R Grain Company v. FAC, Inc., 627 F.2d 129 (8th Cir.1980). There the court held that inadequate capitalization is to be measured at the time of formation of the corporation and that a corporation that was adequately capitalized when formed but had suffered losses is not undercapitalized.
H. Henn, Law of Corporations, § 146 at 253-254 states:
“Incorporation for the purpose of avoiding unlimited liability is recognized in most jurisdictions, on the theory that limited liability is one of the principal objectives of incorporation. While there are holdings to the contrary, suggesting that such incorporation is a fraud in law, such cases have usually involved inadequate initial financing or other factors.
The prevailing rule is that where corporate formalities are substantially observed, initial financing reasonably adequate, and the corporation not formed to evade an existing obligation or a statute or to cheat or to defraud, even a controlling shareholder enjoys limited liability.
s}: s& sfc sH sk
However, where the corporation is launched with inadequate finances, ... there is more justification for holding the latter [controlling shareholder or shareholders] liable. [footnotes omitted]” (Emphasis added)
Henn also states in § 146, footnote 21: “... Financial inadequacy is measured by the nature and magnitude of the cor *548 porate undertaking or the reasonableness of the cushion for creditors at the time of the inception of the corporation ____” (Emphasis added)
Undercapitalization cannot be proved merely by showing that the corporation is now insolvent. Ize Nantan Bagowa, Ltd. v. Scalia, supra. If, however, insolvency occurs soon after incorporation it may be a primary indicator of undercapitalization. See Shafford v. Otto Sales Company, 149 Cal.App.2d 428, 308 P.2d 428 (1957). Under the trust fund doctrine, the corporate entity will be disregarded when a dominant shareholder of an insolvent corporation prefers himself over other creditors in violation of his duties as trustee of the remaining assets. Tigrett v. Pointer, 580 S.W.2d 375 (Tex.Civ.App.1978); Ivy v. Plyler, 246 Cal.App.2d 678, 54 Cal.Rptr. 894 (1966); Fletcher Cyclopedia, Corporations, Vol. 1, Ch. 2 § 41.55. Here no effort was made to show the capitalization of KEP at its inception. There was no evidence of insolvency soon after incorporation and this is not a case where a dominant shareholder is preferring himself over other creditors.[1] Appellants’ claim for attorneys’ fees are allowed. A statement of the amount claimed for such fees is to be included in the statement of costs prescribed by Rule 21(a).
The judgment is reversed and the case is remanded to the trial court which is ordered to enter judgment in favor of appellants and against appellee.
BIRDSALL, C.J., and HATHAWAY, J., concur.

. For cases dealing with inadequate capitalization as a factor and disregard of the corporate entity see Annot. 63 A.L.R.2d 1051 and see An-not. 8 A.L.R.3d 1122, § 7 at 1132.