Filed 12/19/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LYNDA HOFFMAN, | D072929 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00021084-CU OR-NC) |
| SUPERIOR READY MIX CONCRETE, L.P., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Affirmed.

Wright, L'Estrange & Ergastolo, Joseph T. Ergastolo, Andrew E. Schouten and Daniel M. Doft for Defendants and Appellants.

Goode Hemme & Barger and Jerry D. Hemme for Plaintiff and Respondent.

Plaintiff Lynda Hoffman owns 28 acres of land (the property), a portion of which is used to grow plants for an intended nursery. The property is adjacent to a 211-acre rock quarry (the quarry) owned by National Quarries Enterprises LLC and operated by Superior Ready Mix Concrete L.P. (together SRM). After Hoffman prevailed in a trespass action

against SRM, the trial court awarded her costs as the prevailing party and attorney fees under Code of Civil Procedure[1] section 1021.9, which, in relevant part, allows the prevailing plaintiff to obtain reasonable attorney fees in any action to recover damages "to personal or real property resulting from trespassing on lands . . . under cultivation."

SRM appeals, contending Hoffman is not entitled to attorney fees under section 1021.9 because SRM did not trespass onto the areas of land where she was actually growing nursery plants. Assuming we reject this argument, SRM argues that the trial court abused its discretion by awarding Hoffman $289,153.75 in attorney fees because the award was (a) not apportioned between her successful fee and unsuccessful non-fee causes of action, and (b) not reduced to reflect her limited success at trial. SRM also asserts that the trial court abused its discretion by finding that SRM's section 998 offer was invalid and less favorable than Hoffman's trial result.

We conclude that the trial court correctly interpreted section 1021.9 and properly awarded Hoffman her attorney fees as the prevailing plaintiff in this trespass action. We also reject SRM's arguments that the trial court erred when it failed to apportion or reduce Hoffman's attorney fees award. As SRM concedes, these decisions moot its argument regarding the validity of its section 998 argument.

FACTUAL AND PROCEDURAL BACKGROUND

Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment. (*People v. Bogle* (1995) 41 Cal.App.4th 770, 775.)

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

Because this appeal does not challenge the judgment, we provide an abbreviated account of the facts to provide context for our later discussion.

*The Properties*

Hoffman's property is landlocked and surrounded on three sides by SRM's land, which is a vested mining operation under the Surface Mining and Reclamation Act. Hoffman has an easement across SRM's land to access her property and SRM has an easement across Hoffman's property.

Hoffman's husband purchased the property in May 2000. Hoffman's husband grew plants as a hobby and developed a fairly substantial plant collection. The Hoffmans purchased the property intending to use their plant collection to open a commercial nursery and koi-growing operation on the site. The Hoffmans placed roads on the property and installed a water well, a water storage tank, an extensive irrigation system and fencing. From around 2001 through 2010, the Hoffmans grew a variety of plants, including palm trees, subtropical and tropical fruit trees, and citrus trees. They also propagated the plants by seed or cuttings to increase their inventory. In 2007 Hoffman's husband quitclaimed the property to Hoffman. During the summer of 2010, the water well pump on the property broke and the Hoffmans lost approximately 65 percent of their plant inventory.

*The Lawsuit and Trial*

In June 2015 Hoffman filed this action against SRM alleging causes of action for: (1) trespass to land, (2) private nuisance, (3) negligence, (4) negligence per se, (5) quiet title to prescriptive easement, (6) quiet title to easement by necessity, and (7) quiet title to

3

easement by implied reservation.  SRM answered the complaint and filed a cross-complaint seeking declaratory relief and to quiet title to easement by implied reservation, and to quiet title to prescriptive easement.  Hoffman asserted that SRM's trespass, which started in 2012, damaged five areas on their property as follows:

> Area 1: Widening and reconfiguring the easement road on the property which blocked drainage, changed the natural water drainage patterns, and interfered with the operation of Hoffman's gate.
>
> Area 2: Constructing a desiltation basin that encroached onto the property by about 5,000 square feet and caused silt build-up.
>
> Area 3: SRM maintained gravel and/or dirt berms on the property above a natural ravine, which caused erosion.
>
> Area 4: SRM constructed a large dirt berm which encroached on the property in one area and caused dirt and silt runoff onto the property.
>
> Area 5: SRM cleared and graded along the western portion of the common property line and constructed a 672-foot long dirt berm along the common property line, which disrupted water flow and caused dirt and silt runoff onto the property.

The matter proceeded to trial with the parties stipulating that the court would decide the equitable issues raised by Hoffman's and SRM's quiet title and declaratory relief claims and instruct the jury on its findings.  The parties also agreed to dismiss their causes of action for a prescriptive easement.  Prior to instructing the jury, the trial court decided the parties' quiet title and declaratory relief claims.  It determined that Hoffman had a 40-foot-wide right-of-way and utilities easement across the quarry, while SRM had a 20-foot right-of-way easement across the property.  It also found that, except for a single berm, SRM's activities on the property were not within its secondary easement rights.

The jury later returned a special verdict finding for Hoffman on her trespass cause of action, but against her on the nuisance and negligence causes of action. The jury awarded Hoffman $17,000 in compensatory damages, $0 in discomfort and annoyance damages, and $0 in punitive damages. The trial court's judgment noted that Hoffman, in addition to her monetary award, had a 40-foot wide nonexclusive right-of-way easement to install electrical lines.

*Posttrial Motions*

Both parties filed a memorandum of costs. Hoffman sought costs and expert fees she incurred throughout the entire action. SRM sought costs and expert fees incurred by it on or after May 16, 2016, the service date of its section 998 offer. Hoffman filed a motion to recover her attorney fees under section 1021.9 and moved to strike or tax SRM's costs. SRM also moved to strike or tax Hoffman's costs.

The trial court issued a tentative ruling on the motions finding that Hoffman was the prevailing party in the action and awarded her costs. It concluded that SRM's section 998 offer was not reasonable and thus was not valid and, even if the offer were valid, that Hoffman obtained a more favorable judgment at trial than SRM's section 998 offer. It denied Hoffman attorney fees under section 1021.9, finding the statute inapplicable to the facts and circumstances of this case because SRM's trespass onto the property did not disrupt any agricultural cultivation on the property.

The court heard oral argument, which focused on Hoffman's right to recover attorney fees under section 1021.9. Hoffman's counsel explained how the case law did not support the court's interpretation of section 1021.9. The trial court took the matter

5

under submission, stating: "It's going to take some time, so don't expect a quick decision. At a minimum, I will have read every single one of those cases and know them better than you do before I make my final decision in this case."

In its final ruling on the posttrial motions the court confirmed its rulings on the section 998 issues. It reversed its ruling with respect to Hoffman's motion for attorney fees, concluding that Hoffman was entitled to attorney fees as the prevailing plaintiff under section 1021.9. The court ruled that Hoffman was entitled to all attorney fees she requested, even though she did not prevail on every cause of action, because "all of Plaintiff's claims were based on the same core set of facts." After a small reduction in Hoffman's claimed costs, the court awarded Hoffman $16,178.66 in costs and $289,153.75 in attorney fees. SRM timely appealed from the judgment.

DISCUSSION

I. *THE TRIAL COURT DID NOT ERR IN AWARDING HOFFMAN HER ATTORNEY FEES*

SRM contends that the trial court erred in awarding Hoffman attorney fees under section 1021.9 because she failed to demonstrate eligibility for such an award as a matter of law. Specifically, SRM argues that it is undisputed that Hoffman used only six out of 28 acres for nursery purposes and that its trespass onto the property did not damage the portion of the property that Hoffman used for cultivation, nor did the trespass damage any of Hoffman's nursery plants. Hoffman disagrees, arguing that the trial court properly interpreted section 1021.9 because the term "lands . . . under cultivation" refers to the

6

character of the land, not the specific area of the land that was trespassed upon. We agree with Hoffman.

The question presented is the proper interpretation of section 1021.9, an issue that we review de novo. (*In re R. T.* (2017) 3 Cal.5th 622, 627.) "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.] A statute should be construed whenever possible so as to preserve its constitutionality." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.)

Section 1021.9 provides: "In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages

7

imposed by law."  SRM does not challenge that Hoffman is the prevailing plaintiff in an action to recover damages to real property resulting from SRM's trespasses.  The sole question is whether the trial court properly concluded that the trespass occurred on "lands . . . under cultivation."  On this issue we do not write on a blank slate.

In *Haworth v. Lira* (1991) 232 Cal.App.3d 1362 (*Haworth*), the plaintiffs raised horses and other animals on their property in an area zoned as an " 'equestrian district,' " which permitted homeowners to keep horses and other large domestic animals as an accessory to residential use.  (*Id.* at p. 1366.)  Plaintiffs prevailed in a trespass action against a neighbor after the neighbor's dogs came onto their property and injured one of their horses and bit one of the plaintiffs.  (*Id.* at pp. 1365, 1368.)  The appellate court held that the trial court had discretion to award attorney fees under section 1021.9 since the trespass occurred on lands used for the raising of livestock, holding that section 1021.9 was not limited to actions brought by commercial ranchers and farmers.  (*Haworth,* at pp. 1368-1371.)

In *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366 (*Quarterman*) the appellate court concluded that section 1021.9 did not apply to the prevailing plaintiffs in a trespass action after their neighbors' sanding and repainting of their house caused lead contamination to plaintiffs' backyard garden.  (*Quarterman,* at pp. 1368-1369.)  The *Quarterman* court first examined several statutes using the phrase "lands . . . under cultivation" to determine its meaning.  (*Id.* at p. 1373.)  Based on this examination, the *Quarterman* court concluded that "when the Legislature refers to land as cultivated, under cultivation, used for cultivation, or suitable for cultivation, the *ordinary import of the*

8

*description* usually is to agricultural land used for farming and growing crops, or at least rural land as opposed to urban backyards." (*Ibid.*, italics added.) The *Quarterman* court next examined the legislative history of section 1021.9 to determine the meaning of "lands . . . under cultivation." (*Quarterman,* at pp. 1373-1375.) Based on this examination, the court concluded that the phrase "lands . . . under cultivation" "must be read as part of the entire descriptive phrase, 'lands either under cultivation or intended or used for the raising of livestock,' a phrase denoting two alternative uses of rural land." (*Id.* at p. 1375.)

Here, while the Hoffmans had not yet opened a nursery business on the property, the property is zoned for agriculture and is located in a rural area characterized by farming. Over the course of the Hoffmans' ownership of the property they had mulch, planting mix and tree boxes delivered for their future nursery business. Before the well pump broke in 2010, the Hoffmans had about 20,000 plants growing on the property. Thereafter, the Hoffmans maintained their remaining plant inventory and tried to increase it. These facts show that the property was under cultivation, a point SRM does not challenge. (*Quarterman*, *supra*, 55 Cal.App.4th at p. 1373.) Based on these circumstances, the fact that the Hoffmans had not yet opened their nursery business is of no significance. (See *Haworth*, *supra*, 232 Cal.App.3d at p. 1371.)

SRM next contends that section 1021.9 does not apply because its trespass did not damage that portion of the property under cultivation. In other words, its trespass did not damage the land where the Hoffmans grew their plants, or the plants themselves. The plain language of the statute does not support SRM's argument that the trespass must

9

occur to the specific portion of the land under cultivation. Rather, section 1021.9 allows the prevailing plaintiff to recover attorney fees if the trespass caused damage to "lands . . . under cultivation." While not directly addressed by the *Quarterman* and *Haworth* courts, these courts focused on the character of the land as a whole. (*Quarterman*, *supra*, 55 Cal.App.4th at p. 1375; see *Haworth*, *supra*, 232 Cal.App.3d at pp. 1370-1371.) As Hoffman notes in her brief, "A property used for commercial uses is a 'commercial property' even though part if it is used for non-commercial purposes."

SRM contends that Hoffman is eligible for fees under section 1021.9 only if its trespass against land (that was being prepared or used for agricultural purposes) constituted the cause-in-fact of her damages. Had the Legislature intended to only award attorney fees depending where on the plaintiff's property the trespass occurred, it could have drafted section 1021.9 to state: "In any action to recover damages to personal or real property resulting from trespassing on [the portion of] lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages imposed by law." (Bracketed language added.)

If we were to accept SRM's interpretation of section 1021.9 then a hypothetical plaintiff, after successfully showing that a defendant's trespass made the only road to its cultivated land impassable, would not be able to recover attorney fees because the trespass did not damage that portion of the "lands . . . under cultivation." We do not believe that the Legislature intended this result.

10

Finally, SRM argues that the plain language of the statute distinguishes between lands under cultivation (which must actually be under cultivation) and lands used for raising livestock (which must either be used or intended to be used for raising livestock). This distinction, however, does not further SRM's argument because Hoffman's land *was* under cultivation. The issue is whether the defendant's trespass must cause damage to that portion of land actually being cultivated.

*Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583 (*Starrh*) supports our interpretation that fees may be awarded under section 1021.9 for trespass on agricultural land being cultivated, even where defendant did not damage crops themselves or interfere with agricultural operations. In *Starrh*, the plaintiff farmed land next to defendant's oil field. (*Starrh,* at p. 589.) Plaintiff prevailed in an action against defendant alleging subsurface trespass resulting from the migration of polluted water produced from defendant's oil production activities into the native subsurface groundwater underlying plaintiff's property. (*Id.* at pp. 588-589.) It was undisputed that the native groundwater was not usable for drinking or other municipal purposes and was too salty to use for irrigation of most agricultural crops. (*Id.* at p. 590.) The parties disagreed, however, whether the native water was usable for some crops and whether it had any economic value. (*Ibid.*) Nothing in the *Starrh* opinion suggests that the subsurface trespass damaged plaintiff's crops or interfered with its farming activities.

The trial court denied plaintiff's request for attorney fees under section 1021.9 finding that the trespass was not to " ' "lands . . . under cultivation." ' " (*Starrh*, *supra*, 153 Cal.App.4th at p. 589.) The appellate court disagreed, stating that plaintiff "has a

right to extract the groundwater and put it to reasonable use. This is one of the bundle of rights [plaintiff] holds as a property owner." (*Id.* at p. 607.) In examining the legislative history of section 1021.9, the *Starrh* court noted that while the initial bill "was limited to the harm caused by entry onto rural land by motor vehicles or by trespassers walking upon the land through fences and gates, the ultimate version of the bill broadened the statute's scope in order to 'enhance the ability of ranchers to sue trespassers for damages.' [Citation.] It included any action to recover damages of any kind caused by trespass to lands under cultivation. The Legislature's obvious concern was for the farm and ranch communities of our state." (*Starrh,* at p. 608.) The *Starrh* court also referenced an argument made in support of the bill that the expanded language would " 'enhance the ability of ranchers to sue trespassers for damages, particularly in those cases where the rancher must now either compromise a significant portion of a valid claim by suing in small claims court . . . or by spending a major share of the recovery to pay his or her attorney.' " (*Ibid.*)

In *Starrh*, *supra*, 153 Cal.App.4th 583 it was irrelevant that the subsurface trespass did not damage plaintiff's land or plants or that plaintiff did not presently use the native groundwater. Rather, the relevant inquiry was whether the land was under cultivation. Thus, the *Starrh* decision contradicts SRM's unsupported interpretation that, to be entitled to an attorney fees award under section 1021.9, the trespass must cause damage to those areas of land actually being cultivated.

12

Accordingly, we conclude that the trial court correctly interpreted section 1021.9 and properly awarded Hoffman her attorney fees as the prevailing plaintiff in this trespass action.

## II. *THE TRIAL COURT DID NOT ERR IN DECLINING TO APPORTION OR REDUCE THE ATTORNEY FEES AWARD*

Assuming Hoffman is entitled to section 1021.9 attorney fees, SRM contends the trial court abused its discretion in awarding her $289,153.75 because it (1) failed to apportion Hoffman's fees incurred on the fee-shifting claim (trespass) from the non-fee-shifting claims (nuisance and negligence), and (2) refused to reduce her fee award to account for her limited success at trial. We disagree.

### A. *Apportionment*

"Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505 (*Carver*).) " 'Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' [Citation.] 'Attorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories.' [Citation.] Apportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 158-159 (*Graciano*).)

13

Here, SRM argued to the trial court that, should it award Hoffman her attorney fees, the fees should be apportioned to award fees only on her successful trespass claim. The trial court rejected this argument stating that, except as to Hoffman's quiet title cause of action, "[a]s previously discussed, all of [Hoffman's] claims were based on the same core set of facts" and that "case authority holds allocation of fees between causes of action is unnecessary in such circumstances . . . ."[2] The trial court had previously stated:

> "In filing suit, [Hoffman] sought to put an end to [SRM's] unauthorized use and alteration of her land. She alleged that from the end of 2012 through the filing of the action, [SRM] widened and reconfigured a dirt road that ran through her property, changed the grading of the area in a way that negatively impacted surface water flow and damaged [Hoffman's] storm drain system, removed trees and vegetation, creating retention ponds, storing gravel and vehicles, filling a natural ravine on [Hoffman's] property with quarry waste, and blocking [Hoffman's] gate. These allegations formed the basis for each of [Hoffman's] claims.

> "While [Hoffman] did not prevail on all seven causes of action, the entire action and thus all seven causes of action pertained to the same set of facts. Success on one cause of action, combined with retention of a 40-foot-wide easement across the Quarry Property, and a ruling in her favor as to [SRM's] activities on her property, establishes [Hoffman] prevailed under the circumstances regardless of a monetary damages award significantly smaller than sought."

---

[2] SRM contends that the "core set of facts" standard used by the trial court and advocated by Hoffman is incorrect and that the court should have considered whether Hoffman's tort claims were "inextricably intertwined" making apportionment impractical or impossible. Because the trial court used the wrong legal standard, SRM claims we must remand with instructions to reassess the issue under the correct legal standard. We reject this argument because the standard used by the trial court is one of three related standards that a court may use in exercising its discretion regarding the apportionment of attorney fees. (*Graciano*, *supra*, 144 Cal.App.4th at pp. 158-159.)

14

Although SRM acknowledges that attorney fees need not be apportioned when incurred for representation of an issue common to both successful fee and unsuccessful nonfee claims, it argues that this case falls into that category of cases where "overlapping fees may be denied where awarding them would 'impair legislative policies implicated by the respective claims.' " In support of this argument, SRM relies on *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780 (*Cassim*) and *Carver*, *supra*, 119 Cal.App.4th 498.

*Cassim*, *supra*, 33 Cal.4th 780 involved an exception to the rule providing that each party to a lawsuit ordinarily pays its own attorney fees for insurance bad faith cases. (*Id.* at p. 806.) This exception allows an insured to recover its attorney fees incurred to compel payment of benefits due under an insurance policy as damages in an insurance bad faith action. (*Id.* at pp. 806-807, citing *Brandt v. Superior Court* (1985) 37 Cal.3d 813.) Accordingly, apportionment was necessary because the plaintiff in *Cassim* could recover attorney fees for work done to obtain benefits under the insurance policy, but could not recover fees for work done on a tort cause of action for bad faith. (See *Cassim*, at pp. 807-813.)

*Carver*, *supra*, 119 Cal.App.4th 498 was an action for violation of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), fraud, and breach of contract. (*Id.* at p. 501.) Defendant prevailed and moved for attorney fees, but under the Cartwright Act only a prevailing plaintiff could recover attorney fees. (*Carver,* at p. 503.) The trial court declined to award attorney fees that related exclusively to or inextricably overlapped Cartwright Act issues and apportioned the fees. (*Carver,* at p. 503.) The appellate court affirmed, holding that "the unilateral fee-shifting provision of [Business and Professions

Code] section 16750, subdivision (a) prohibits an award of attorney fees for successfully *defending* Cartwright Act and non-Cartwright Act claims that overlap. To allow [defendant] to recover fees for work on Cartwright Act issues simply because the statutory claims have some arguable benefit to other aspects of the case would superimpose a judicially declared principle of reciprocity on the statute's fee provision, a result unintended by the Legislature, and would thereby frustrate the legislative intent to 'encourage improved enforcement of public policy.' " (*Carver,* at p. 504.)

*Cassim*, *supra*, 33 Cal.4th 780 and *Carver*, *supra*, 119 Cal.App.4th 498 are inapposite as neither case addressed whether attorney fees need to be apportioned between successful fee and unsuccessful nonfee claims to a prevailing plaintiff under a unilateral fee-shifting statute. Although SRM argues that apportionment is mandatory because Hoffman's nonfee claims did not further section 1021.9's purposes, it cited no authority to support this contention, and we have located no published authority addressing this issue under section 1021.9. We also examined case law addressing several other unilateral fee shifting statutes regarding fee apportionment, namely: Labor Code section 1194; Business & Professions Code section 16750, subdivision (a); Welfare and Institutions Code sections 15657, subdivision (a) and 15657.5, subdivision (a); and Civil Code sections 54.3 and 52, subdivision (a). We located no published cases requiring apportionment under these statutes.

Given this judicial landscape and SRM's failure to identify how awarding Hoffman her attorney fees on unsuccessful nonfee claims would impair a legislative policy, we conclude that the trial court did not err when it applied the general rule stated

16

in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp. 129-130.)

Hoffman's complaint shows that her trespass, nuisance and negligence causes of action were all based on the same set of facts.[3] Moreover, the jury instructions identified the same measure of damages for each cause of action and the special verdict form asked the jurors to answer just one set of damages questions regardless of which cause of action prevailed. Finally, Hoffman's motion for attorney fees included a declaration from her counsel stating that the trespass, nuisance and negligence causes of action were based upon the same set of core facts and that professional services were so intertwined among these claims that it was impractical to separately bill for each cause of action. Finally, the record on appeal does not contain the reporter's transcripts for the entire trial. Thus, we cannot ascertain the amount of trial time spent addressing each of the three causes of action and, absent a record demonstrating error, the order is presumptively correct. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

---

[3] SRM argues that Hoffman's tort causes of actions were not based on the same core set of facts because the nuisance and negligence claims required Hoffman to prove additional facts beyond those required for her trespass claim. This argument, however, confuses the elements of the three causes of action with the facts underlying these claims. The facts underlying each cause of action were identical.

17

B. *Reduction*

SRM next asserts that the trial court abused its discretion when it refused to reduce Hoffman's requested fees in light of her limited success at trial. SRM claims that the trial court was required to first determine Hoffman's lodestar figure on her successful claims and then consider her relative success in achieving her objective on overlapping claims and reduce the amount if appropriate. Relying on *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328 (*Mann*) and *San Diego Police Officers Assn. v. San Diego Police Department* (1999) 76 Cal.App.4th 19 (*San Diego Police Officers Assn.*), SRM argues that we should reverse the attorney fee award and remand with instructions that the trial court exercise its discretion under the " 'correct legal standard.' "

In evaluating the amount of attorney fees awarded by the trial court our review is deferential as "the 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) " 'The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' " (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1096.) "[T]here is no requirement that the trial court make an award of attorney fees in an amount that is commensurate with or in proportion to the

18

degree of success in the . . . litigation." (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398.)  We review the trial court's award of attorney fees for abuse of discretion, which we find only if no reasonable basis for the court's action is shown. (*Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 233.)

Here, in arguing that the trial court erred in the amount of attorney fees awarded, SRM exclusively focuses on Hoffman's success at trial.  While the success of the party seeking fees is relevant, it is but one factor in the trial court's analysis.  (*PLCM Group v. Drexler*, *supra*, 22 Cal.4th at p. 1096.)  As another court explained, " '[a] rule of proportionality that would limit fee awards . . . to a proportion of the damages recovered . . . is inconsistent with the flexible approach to lodestar calculations that takes into account all considerations relevant to the reasonableness of the time spent.' [Citation.]  '[W]e do not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall.' " (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 421.)  Additionally, we do not agree with SRM's contention that the trial court applied the wrong legal standard.  In making this argument SRM cites *Mann*, *supra*, 139 Cal.App.4th 328 and *San Diego Police Officers Assn.*, *supra*, 76 Cal.App.4th 19.

In *San Diego Police Officers Assn.*, *supra*, 76 Cal.App.4th 19 the trial court granted plaintiff's motion for attorney fees under section 1021.5.  (*San Diego Police Officers Assn.,* at p. 24.)  The trial court, however, applied a negative multiplier to reduce the requested fees.  (*Ibid.*)  The appellate court affirmed the reduction where the record showed that the plaintiff "had achieved very limited success; the portion of its writ

19

petition on which it prevailed . . . did not involve complex issues of law; the case did not preclude [the association's] attorneys from working on other matters and did not involve a contingency fee; and the award of fees would ultimately be borne by the taxpayers." (*Ibid.*)  The *San Diego Police Officers Assn.* court further noted that "[t]he vast majority of [the plaintiff's] time and effort was clearly spent on issues upon which the [defendant] prevailed."  (*Ibid.*)

The *Mann* court reviewed an attorney fees award to prevailing defendants under California's anti-SLAPP statute (Code Civ. Proc., § 425.16) where defendants succeeded in striking one of four challenged causes of action.  (*Mann*, *supra*, 139 Cal.App.4th at p. 333.)  The *Mann* court stated that "[t]he fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way[, including evaluation of other] relevant factors, such as the experience and abilities of the attorney and the novelty and difficulty of the issues . . . ."  (*Id.* at p. 345.)  It concluded that the trial "court erred in failing to reduce the attorney fees award for fees attributable to the causes of action that remained in the litigation.  Although the amount to be awarded could not be calculated through a purely mechanical approach by allocating particular hours to particular claims, the court should have considered the significance of the overall relief obtained by defendants in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved."  (*Ibid.*)  The *Mann* court determined that an attorney fees award

20

proportionate to the success achieved in the anti-SLAPP motion would advance "the objectives of the anti-SLAPP statute and minimizes abuses." (*Mann,* at p. 347.)

As a threshold matter, *Mann*, *supra*, 139 Cal.App.4th 328 and *San Diego Police Officers Assn.*, *supra*, 76 Cal.App.4th 19 do not stand for the proposition that a statutory attorney fees award must be proportional to the degree of success obtained in the litigation. Additionally, neither case addressed section 1021.9 and are thus distinguishable. As our high court has noted "every fee-shifting statute must be construed on its own merits . . . ." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136.) Accordingly, we disagree with SRM's contention that *Mann* and *San Diego Police Officers Assn.* set forth the correct legal standard to evaluate a fee award under section 1021.9.

We reviewed the legislative history for section 1021.9. Comments on the bill note that plaintiffs suing for trespass "spend[] a major share of the recovery to pay his or her attorney." (Assem. Com. on Judiciary, com. on Sen. Bill No. 2513 (1985-1986 Reg. Sess.) as amended Aug. 12, 1986.) Thus, the unilateral fee award to prevailing plaintiffs in a trespass action "enhance[s] the ability of [farmers and] ranchers to sue trespassers for damages . . . ." (*Ibid.*) Here, while Hoffman's monetary recovery was modest, she obtained a declaration of rights defeating SRM's claim that it was authorized under its right to "secondary easements" to maintain a silt basin, gravel and dirt berms, widen the road in excess of 20 feet, change the flow of surface water, or change the grade on its easement. In declaring Hoffman the prevailing party and awarding her attorney fees, the trial court acknowledged that Hoffman's "damages award [was] significantly smaller than

21

sought."  Nonetheless, the court did not reduce Hoffman's attorney fees award because Hoffman achieved her primary litigation goal of protecting her property and refuting SRM's secondary easement claims.  Under these circumstances, we reject SRM's argument that the trial court abused its discretion when it declined to reduce Hoffman's attorney fees award.

### III.  *SRM'S SECTION 998 OFFER*

#### A.  *Additional Background*

Hoffman instituted this action in June 2015.  In May 2016, a few weeks before trial, SRM served a section 998 offer that offered:  (1) to grant Hoffman a right of way easement over the existing road on the quarry property 20 feet in width, (2) to abandon any right to an easement over the her property, and (3) to pay Hoffman  $70,000 in satisfaction of all damages, attorney fees and costs.  Hoffman did not accept the offer.

#### B.  *Analysis*

 The trial court concluded that SRM's section 998 offer was not reasonable and thus was not valid and, even if the offer were valid, it concluded that Hoffman obtained a more favorable judgment at trial than SRM's section 998 offer.  SRM claims that the trial court erred in finding that SRM's section 998 offer was invalid and abused its discretion in how it compared Hoffman's recovery with SRM's section 998 offer.  In its reply brief, SRM conceded that a ruling against it regarding the propriety of Hoffman's attorney fees award moots this issue.

Section 998 "is a cost-shifting statute which encourages the settlement of actions, by penalizing parties who fail to accept reasonable pretrial settlement offers."  (*Heritage*

22

*Engineering Construction, Inc. v. City of Industry* (1998) 65 Cal.App.4th 1435, 1439.)

"If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment . . . , the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." (§ 998, subd. (c)(1).) To determine whether the judgment obtained by a plaintiff is more favorable than an offer that specified the amount of the offered judgment includes reasonable attorney fees and costs, the court must add the amount of damages recovered by the plaintiff to the amount of his or her recoverable preoffer costs (*Mesa Forest Products, Inc. v. St. Paul Mercury Ins. Co.* (1999) 73 Cal.App.4th 324, 330) and the amount of preoffer attorney fees authorized by statute (*Heritage*, at p. 1441), and compare that total amount to the amount of the section 998 offer.

Assuming the validity of SRM's section 998 offer and ignoring the valuation of the nonmonetary components of SRM's section 998 offer, SRM offered Hoffman "$70,000.00, in satisfaction of all claims or damages, costs and expenses, attorney's fees, and interest in the complaint and cross-complaint of this action." When Hoffman received the offer she had already incurred $6,082.50 in preoffer costs and $93,827 in preoffer attorney fees. Thus, when Hoffman's monetary recovery of $17,000 is added to her preoffer costs and fees it far exceeded SRM's $70,000 offer. Accordingly, we accept SRM's concession and deem this issue moot.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.


NARES, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.