Filed 1/15/21  E-Band Communications v. Nexxcom Wireless CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| E-BAND COMMUNICATIONS, LLC, | D075868 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2015-00011220-CU-CL-CTL) |
| NEXXCOM WIRELESS, LLC, | |
| Defendant, | |
| SALVATORE S. BENTIVEGNA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Behmer & Blackford, Timothy S. Blackford; Law Offices of Mary A. Lehman and Mary A. Lehman, for Defendant and Appellant Salvatore S. Bentivegna.

Samuel Jay Lawrence, in pro. per., for Defendant and Appellant Samuel Jay Lawrence.

Tatro & Lopez, Timothy J. Tatro, Julie Lopez; Williams Iagmin and Jon R. Williams, for Plaintiff and Respondent.

Salvatore S. Bentivegna and Samuel Jay Lawrence appeal an amended judgment naming them as additional judgment debtors after the trial court found that they were alter egos of the original judgment debtor, defendant NexxCom Wireless, LLC (NexxCom). Bentivegna and Lawrence were NexxCom's sole owners. Bentivegna was its founder and chairman. Lawrence was its chief executive officer.

Bentivegna contends the amendment violated his constitutional right to procedural due process because the original judgment against NexxCom was based on its default. Lawrence joins Bentivegna's contention.

We affirm. It is undisputed on appeal that Bentivegna and Lawrence were NexxCom's alter egos; NexxCom had no separate existence apart from them. Bentivegna and Lawrence directed NexxCom's years-long defense of the underlying litigation and were virtually represented therein. The amendment did not violate their due process rights.

FACTUAL AND PROCEDURAL BACKGROUND

"Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment." (*Hoffman v. Superior Ready Mix Concrete, L.P.* (2018) 30 Cal.App.5th 474, 478.) Additional facts will be discussed where relevant in the following section.

In its operative complaint, plaintiff E-Band Communications, LLC (E-Band) alleged that it entered into a written contract with NexxCom to supply high-speed wireless networking equipment for NexxCom to install at various customer locations, including the London Stock Exchange. After E-Band delivered the equipment, NexxCom did not pay E-Band as promised. NexxCom falsely told E-Band it would have the ability to pay in the future.

Based on this misrepresentation, E-Band continued to provide technical support and ship additional equipment.

In April 2015, after NexxCom still did not pay, E-Band filed the underlying lawsuit. It alleged causes of action for breach of contract, fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, open book account, and account stated. It sought compensatory damages of approximately $500,000, as well as consequential damages, punitive damages, interest, and attorney fees and costs.

NexxCom answered E-Band's complaint and filed a cross-complaint against E-Band and a related entity. NexxCom alleged that E-Band's equipment was mislabeled, did not operate as represented, and did not meet required specifications, among other things. The cross-complaint included causes of action for breach of contract, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and negligent misrepresentation. NexxCom sought compensatory damages of approximately $1.4 million, as well as attorney fees and costs.

After more than a year of litigation, the parties stipulated to a discovery referee. They spent the next ten months litigating various discovery disputes, including nine hearings before the discovery referee. The discovery referee repeatedly ordered NexxCom to collect and produce relevant electronically-stored information (ESI), but NexxCom did not do so.

E-Band sought sanctions for NexxCom's noncompliance with the discovery referee's orders. After several "interim" sanctions orders, the discovery referee gave NexxCom a final opportunity to explain its ESI collection efforts, after which he would issue a final ruling on E-Band's motion for sanctions.

In the final ruling, the discovery referee recounted the history of the parties' discovery disputes. In October 2016, the discovery referee issued the first of several orders compelling NexxCom to collect and preserve relevant ESI. Two weeks later, the discovery referee found that NexxCom had failed to retain relevant evidence and ordered it to describe its efforts to preserve and collect ESI. In response, Bentivegna submitted a declaration describing NexxCom's efforts. The discovery referee found these efforts inadequate and again ordered NexxCom to collect and preserve relevant ESI. Bentivegna submitted another declaration in an attempt to explain why NexxCom still had not complied. Unsatisfied, E-Band filed its motion for sanctions. Bentivegna filed a third declaration in opposition to E-Band's motion. He again described NexxCom's discovery efforts. At a hearing, the discovery referee informed NexxCom it was considering issue and evidentiary sanctions. The discovery referee ordered NexxCom to provide further detail regarding its efforts to collect and preserve ESI and, if no preservation measures were taken, "to state this fact." Bentivegna submitted a fourth declaration. In a follow-up hearing, the discovery referee again found NexxCom's efforts inadequate. He found that E-Band had made a prima facie showing that NexxCom had lost or destroyed potentially relevant evidence. The discovery referee issued another order regarding preservation and allowed E-Band to take limited depositions of two NexxCom employees. This time, Lawrence submitted a declaration regarding NexxCom's efforts.

In his final ruling, the discovery referee confirmed E-Band had shown that NexxCom had despoiled relevant evidence. He found that "NexxCom allowed evidence to be destroyed through gross negligence tantamount to bad faith." The evidence "[went] to the very heart of the lawsuit; it is not tangential or conjectural." Even after the discovery referee's involvement,

4

"NexxCom was extremely dilatory and half-hearted in complying despite repeated warnings of the adverse consequences of non-compliance. Most, if not all, of the destroyed evidence was available when [E-Band's] complaint was filed on April 2, 2015. Certainly it was available in January 2014, by which date NexxCom had to have known that *it* might itself file suit against E-Band, even if E-Band did not file suit."

As to the remedy, the discovery referee found that striking NexxCom's answer and dismissing its cross-complaint would be "too drastic a remedy for the evidence spoliation." Instead, the discovery referee imposed the following issue and evidentiary sanctions: (1) six NexxCom-affiliated witnesses would be barred from testifying on NexxCom's behalf; (2) NexxCom would not be allowed to offer or rely on any actions, statements, emails, or other documents performed or authored by these witnesses; (3) the court should instruct the jury that "the despoiled evidence should be deemed to have been helpful to E-Band's claims and defenses and injurious to NexxCom's claims and defenses"; and (4) NexxCom should be required to pay E-Band's reasonable attorney fees in connection with the various discovery motions. The discovery referee also ordered NexxCom to "turn over its ESI immediately to E-Band . . . in its native format with a *detailed written and verified* description of what is being produced."

After the orders and hearings described above, but prior to the discovery referee's final ruling, NexxCom filed a "Substitution of Attorney" form, in which it purported to discharge its retained attorney and represent itself. Bentivegna signed the form on NexxCom's behalf and listed himself as its new legal representative. Apparently at the request of the discovery referee, the trial court issued an "Order to Show Cause Re: Legal Representation" to NexxCom. The order noted that NexxCom purported to

5

represent itself, contrary to California law. It found that NexxCom's action had "essentially brought this litigation to a standstill. Trial has already been continued twice in order to allow NexxCom additional time and opportunities to comply with the Discovery Referee's numerous Orders to provide discovery to E-Band. The Discovery Referee ultimately determined that NexxCom had destroyed key evidence in this matter, and awarded sanctions against NexxCom. [Citation.] Now, NexxCom's course of action in relieving its counsel and failing to name substitute counsel has further prejudiced E-Band in that trial is imminently approaching, and E-Band is unable to proceed with the remaining discovery in this case. Key documents have yet to be produced by NexxCom, several percipient witnesses need to be deposed, and no expert discovery has been completed, despite E-Band's best efforts. Further, without licensed counsel, NexxCom may take no action to present evidence or argument regarding its alleged claims or defenses." It therefore ordered NexxCom to appear and show cause "why NexxCom's operative pleadings should not be stricken from the case record in their entirety with prejudice and judgment entered in favor of E-Band on the entire action, with a prove-up hearing scheduled for E-Band to submit evidence of the amount of its damages."

After discharging its counsel, NexxCom ceased participating in the litigation. It failed to respond to correspondence and discovery requests served by E-Band. It failed to appear at the discovery referee's final hearing on E-Band's motion for sanctions. And, despite service of the order, it failed to appear at the court's hearing on its order to show cause regarding NexxCom's legal representation. The court therefore issued a minute order striking NexxCom's answer and cross-complaint. It directed E-Band's counsel "to proceed with default."

6

E-Band submitted a request for entry of default, including approximately $500,000 in compensatory damages, $340,000 in interest, and $625,000 in attorney fees. It served the request by mail on NexxCom. The clerk of the trial court entered NexxCom's default as requested.

Several months later, the court held a default prove-up hearing. It entered a default judgment in favor of E-Band and against NexxCom for approximately $1.5 million. E-Band served the judgment on Bentivegna and Lawrence.

Bentivegna and Lawrence appeared for judgment debtor examinations on behalf of NexxCom. E-Band discovered that NexxCom was defunct, it had no assets, and it planned to file for bankruptcy as soon as a federal tax audit was concluded.

E-Band filed a motion to amend the judgment to add Bentivegna and Lawrence as judgment debtors on the theory that they were NexxCom's alter egos. E-Band argued that (1) Bentivegna and Lawrence ignored the separate corporate existence of NexxCom, (2) it would promote injustice to allow Bentivegna and Lawrence to take advantage of the corporate form, (3) Bentivegna and Lawrence had control over the underlying litigation, and (4) the judgment against NexxCom was based on terminating sanctions after two years of active litigation, and not a true default, so due process did not preclude the requested amendment.

E-Band submitted evidence from a certified public accountant who examined NexxCom's records. She observed that Bentivegna and Lawrence commingled personal and corporate funds, used corporate funds to pay personal expenses, extracted over $1 million from NexxCom as it suffered increasing debt, failed to keep adequate records, and did not maintain various NexxCom-related entities as separate corporations. The accountant

7

concluded there were "numerous indicia of alter ego relationships" between and among NexxCom, another NexxCom entity, Bentivegna, and Lawrence, including "financial dependence, confusion about corporate identity, lack of separateness and dominion and control[.]"

In a declaration, E-Band's counsel recounted NexxCom's participation in the litigation: "[NexxCom] appeared and argued at more than a half dozen Court hearings, including two pleading challenges, several *ex parte* hearings, several telephonic discovery hearings, a hearing on its (denied) motion to quash, a case management conference, a hearing on its suspended corporate status, two hearings requesting trial continuances, and several depositions of former [NexxCom] employees. [NexxCom] hired [two] attorneys, engaged in settlement discussions, hired an outside ESI forensic expert, retained five outside expert witnesses, produced its bank and financial information, and filed more than 300 pages of briefing with [the discovery referee]."

Bentivegna and Lawrence opposed the motion to amend. They contended they could not be added to the judgment because it was taken by default. They disputed E-Band's " 'indicia' of alter ego" and denied taking any unearned compensation. They argued that NexxCom ran out of money to pay its attorney, which prompted its substitution of counsel. They maintained that it was NexxCom's failure to retain counsel—not terminating sanctions—that led to its default.

After hearing argument, the court granted E-Band's motion to amend. It determined that Bentivegna and Lawrence were NexxCom's alter egos based on evidence of commingling of funds, use of corporate funds for personal expenses, improper distributions in excess of $1 million while NexxCom was becoming insolvent, and failure to observe corporate formalities. The court found that Bentivegna and Lawrence controlled the

8

underlying litigation and were virtually represented therein. Their personal involvement was substantial: They submitted five separate declarations in connection with discovery motions, they were percipient witnesses and were designated as expert witnesses for trial, they executed 13 discovery verifications, and they personally reviewed and approved the litigation protective order governing confidentiality. In the substitution of attorney form, Bentivegna designated himself as NexxCom's legal representative. The court concluded, under these circumstances, that "[t]his is not a case where a 'default' raises due process concerns. Such due process concerns arise only when the underlying matter is truly not litigated—when [the] judgment is entered just weeks after a complaint is filed or where no litigation efforts are undertaken."

The court entered an amended judgment naming Bentivegna and Lawrence as judgment debtors, along with NexxCom. Bentivegna and Lawrence appeal.

DISCUSSION

"Section 187 of the Code of Civil Procedure [(section 187)] grants to every court the power to use all means to carry its jurisdiction into effect, even if those means are not set out in the code. [Citation.] Under section 187, the court has the authority to amend a judgment to add additional judgment debtors." (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778 (*NEC*), fn. omitted.)

"Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. [Citations.] This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. [Citations.] 'Such a

9

procedure is an appropriate and complete method by which to bind new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit.' " (*NEC, supra*, 208 Cal.App.3d at p. 778.)

"In light of the requirements that the proposed judgment debtors have had control of the underlying litigation and have been virtually represented, it is something of a misnomer to say that section 187 provides a ' "method by which to bind new . . . defendants [to the judgment]." ' [Citations.] More accurately, the statute ' "properly designate[s] the *real* defendants." ' [Citations.] Simply put, section 187 recognizes 'the inherent authority of a court to make its records speak the truth.' " (*Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 509.)

Our Supreme Court has recognized that this use of section 187 may raise due process concerns under certain circumstances. In *Motores de Mexicali, S.A. v. Superior Court of Los Angeles County* (1958) 51 Cal.2d 172, 173 (*Motores*), the Supreme Court considered whether the trial court erred by refusing to add three individuals to a default judgment. In the underlying action, the plaintiff filed suit against Erbel, Inc., to recover several unpaid debts. (*Ibid.*) Sixteen days later, the plaintiff obtained a default judgment against Erbel. (*Ibid.*) Shortly thereafter, Erbel filed for bankruptcy protection, and the plaintiff was unable to obtain satisfaction of its judgment. (*Ibid.*) The plaintiff subsequently filed a petition to amend the judgment to add three individuals, whom the plaintiff alleged were alter egos of Erbel. (*Id.* at pp. 173-174.)

The Supreme Court acknowledged prior alter ego authorities, but it concluded that the amendment was inappropriate because it would deny the

10

individuals due process of law. "Unlike the corporations added to the judgments in those two [prior] cases, [the individuals here] in no way participated in the defense of the basic action against Erbel, Inc. Those three did not have attorneys subsidized by them appearing and defending the action against the corporation now alleged to be their *alter ego*. Instead, the judgment was entered against Erbel, Inc., strictly by default." (*Motores*, *supra*, 51 Cal.2d at pp. 175-176.) "Further, the same facts which serve to distinguish the cited cases also indicate that an amendment to the judgment here to include [the individuals] would constitute a denial of due process of law. [Citation.] That constitutional provision guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses. [Citations.] To summarily add [the individuals] to the judgment heretofore running only against Erbel, Inc., without allowing them to litigate any questions beyond their relation to the allegedly *alter ego* corporation would patently violate this constitutional safeguard." (*Id*. at p. 176.)

Thus, to prevail on a motion to amend under section 187 and overcome any due process concerns, "the judgment creditor must show, by a preponderance of the evidence, that: '(1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; (2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and (3) an inequitable result will follow if the acts are treated as those of the entity alone.' [Citation.] The decision to grant or deny the motion lies within the sound discretion of the trial court [citation] and will not be disturbed on appeal if there is a legal basis for the decision and substantial evidence supports it." (*Highland Springs Conference & Training*

11

*Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280 (*Highland Springs*).)

Courts, following *Motores*, have refused to allow an amendment under section 187 where the original defendant failed to offer any defense in the underlying litigation. In *NEC*, the plaintiff filed suit against a corporation, Ph Components. (*NEC, supra*, 208 Cal.App.3d at p. 775.) Ph filed a general denial, but no further proceedings were conducted and neither party engaged in discovery. (*Id*. at pp. 775, 781.) Ph was under financial stress and considering bankruptcy. (*Id*. at p. 775.) The day before trial, Ph told the plaintiff it would not appear. (*Ibid*.) The trial took place nonetheless, and the court entered judgment against Ph. (*Id*. at pp. 775-776.) Ph filed for bankruptcy protection six weeks later. (*Id*. at p. 776.) The plaintiff subsequently sought to amend the judgment to add Ph's sole shareholder as an additional judgment debtor. (*Ibid*.) The trial court granted the motion to amend, and the shareholder appealed. (*Ibid*.)

The *NEC* court reversed. (*NEC, supra*, 208 Cal.App.3d at p. 778.) Relying on *Motores*, the court found (1) Ph made no attempt to defend the lawsuit, so the shareholder's interests were not represented; (2) the interests of Ph and the shareholder were not the same; and (3) the shareholder did not control the defense of the litigation (indeed, "[t]here was no defense for [the shareholder] to control"). (*Id*. at pp. 780-781.) The court explained, " 'Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation.' [Citation.] Clearly, some active defense of the underlying claim is contemplated. [Citation.] In this case, [the shareholder] delegated responsibility for the claim to [a corporate officer]. [They] did attempt to satisfy the creditors of Ph

12

but were never actively involved in defending the [plaintiff's] lawsuit. As a result, we do not believe that there is substantial evidence to support the trial court's conclusion that [the shareholder] controlled the action between [the plaintiff] and Ph." (*Id*. at p. 781.)

More recently, in *Wolf Metals Inc. v. Rand Pacific Sales, Inc.* (2016) 4 Cal.App.5th 698, 708 (*Wolf Metals*), the court reversed an order amending a judgment under circumstances "materially identical" to *Motores*. In *Wolf Metals*, a plaintiff filed the underlying lawsuit to obtain payment for certain goods sold. (*Id*. at p. 701.) The defendant, RPS, answered the complaint but filed for bankruptcy several months later. (*Ibid*.) The next year, RPS emerged from bankruptcy protection without discharge. (*Ibid*.) The underlying litigation resumed, but RPS's counsel failed to appear at scheduled hearings. (*Id*. at pp. 701-702.) The trial court struck RPS's answer and entered a default judgment. (*Id*. at p. 702.) The plaintiff filed a motion to amend the judgment to add an individual whose family trust was RPS's sole shareholder. (*Id*. at p. 706.) The trial court found that the individual was RPS's alter ego and granted the motion. (*Id*. at p. 707.)

In reversing, the *Wolf Metals* court explained, "Like the defendant corporation in *Motores*, RPS offered no evidence-based defense in the underlying action, and the judgment against RPS was entered by default. Although [the individual] dominated RPS and knew of [the plaintiff's] suit against RPS, his circumstances do not differ from the individuals who dominated the defendant corporation in *Motores*. Because *Motores* held that the latter individuals were improperly added as judgment debtors, it precludes the inclusion of [the individual here] as judgment debtor on an alter ego theory." (*Wolf Metals*, *supra*, 4 Cal.App.5th at pp. 708-709, fns. omitted.) "RPS offered no defense to [the plaintiff's] suit, and the

13

judgment against it was entered by default. Accordingly, the trial court erred in amending the default judgment to include appellants as judgment debtors on the basis of an 'alter ego' theory." (*Id*. at p. 709.)

Here, neither Bentivegna nor Lawrence challenges the court's findings on the first two elements under section 187, that they controlled the underlying litigation and were NexxCom's alter egos. As to the third element, Bentivegna argues that it is "not inequitable here to preserve the separate obligations between NexxCom and its corporate officers" but he does not make any cogent legal argument that the third element was not met under the applicable standard of review. This argument appears to be merely supportive of Bentivegna's main contention, discussed below, and it does not establish any basis for reversal on its own.

Eschewing the three traditional elements under section 187, Bentivegna contends the amendment violated his constitutional right to due process as a matter of law. Lawrence joins Bentivegna's contention but does not offer any argument of his own.

We disagree that the amendment violated due process. Due process requires that the alleged alter ego must control the underlying litigation and have the opportunity to defend against the plaintiff's allegations, such that he was virtually represented therein. (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 280; see *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 (*Minton*).) As noted, Bentivegna does not dispute that he controlled the underlying litigation against E-Band. Nor does he dispute the facts of that two-year litigation, including NexxCom's answer, its cross-complaint, its retention of counsel, its motion practice, its hiring of five outside expert witnesses and an ESI expert, its failure to comply with its ESI preservation and collection obligations, its repeated attempts to explain its noncompliance

(personally led by Bentivegna), and the severe sanctions order against it. NexxCom had the opportunity to litigate its defenses to E-Band's claims. In practice, those defenses were apparently discovery obstruction and evidence spoliation. When these tactics were unsuccessful, and any substantive defenses substantially impaired by the discovery referee's sanctions order, NexxCom brought the litigation to a halt by attempting to represent itself— through its chairman Bentivegna. The trial court therefore entered NexxCom's default and awarded judgment in favor of E-Band.

Bentivegna relies on *Motores*, *NEC*, and *Wolf Metals*. But in those cases, there was no litigation to control, no defense presented, and therefore no virtual representation. *Motores* considered a judgment "strictly by default" entered 16 days after the complaint was filed. (*Motores*, *supra*, 51 Cal.2d at pp. 173, 176.) *NEC* considered a judgment after trial where the defendant answered but there were no further proceedings, no discovery, and no defense. (*NEC*, *supra*, 208 Cal.App.3d at p. 781.) And *Wolf Metals* also considered a default judgment where the defendant answered but did not otherwise participate in the proceedings, which the court described as "materially identical" to *Motores*. (*Wolf Metals*, *supra*, 4 Cal.App.5th at pp. 701-702, 708.)

Bentivegna attempts to draw a bright-line rule against amending a *default* judgment to add an alter ego as an additional judgment debtor, regardless of the circumstances. He finds support in a respected practice guide: "[B]ecause of due process concerns, a default judgment is not subject to such an amendment [under section 187]." (Ahart, Cal. Practice Guide: Enforcing Judgments & Debts (The Rutter Group 2020) ¶ 6:1567, citing *Motores*, *NEC*, and *Wolf Metals*.) *Wolf Metals* implies such a rule as well, by

15

interpreting *Motores* as requiring presentation of an "evidence-based" defense. (*Wolf Metals*, *supra*, 4 Cal.App.5th at p. 708.)

Such a bright-line rule is not warranted by *Motores* or general principles of due process. The Supreme Court in *Motores* did not imply that amending *any* default judgment would violate due process. It held that it would violate due process to amend a default judgment "without allowing [the individuals] to litigate any questions beyond their relation to the allegedly *alter ego* corporation." (*Motores*, *supra*, 51 Cal.2d at p. 176.) This holding recognizes that proof of alter ego alone is insufficient; the alleged alter ego must also have controlled the underlying litigation and therefore have had the opportunity to defend against the plaintiff's claims. (See *Minton*, *supra*, 56 Cal.2d at p. 581; *Highland Springs*, *supra*, 244 Cal.App.4th at p. 280; see also *NEC*, *supra*, 208 Cal.App.3d at p. 781 ["Clearly, some active defense of the underlying claim is contemplated."].)

As this court has explained, "[t]he ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns. The due process considerations are in addition to, *not in lieu of*, the threshold alter ego issues." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1421.)

A default judgment does not necessarily reflect lack of opportunity to litigate, or a complete failure to defend, as in *Motores*, *NEC*, and *Wolf Metals*. It may reflect a terminating sanction or, as here, a defendant's decision not to contest the merits after attempting what defense it could. In either case, a trial court may find that an alter ego who controls the litigation may be held

16

to the judgment just as an alter ego who presents an evidence-based defense. A court may reasonably find that the alter ego should not be rewarded for presenting a *non*-evidence-based defense that occupied years of contentious litigation, ultimately resulted in a severe sanction against the defendant, and led to its abandonment of the proceedings.

While *Wolf Metals* was undoubtedly correctly decided on the facts presented, its focus on an "evidence-based" defense was unnecessary and in our view unsupported. (*Wolf Metals, supra*, 4 Cal.App.5th at p. 708.) The defendant in *Wolf Metals* "offered no defense" to plaintiff's suit, whether evidence-based or not. (*Id*. at p. 709.) It was therefore unnecessary for *Wolf Metals* to decide whether an "evidence-based" defense was required, and the court's decision on this point is arguably dicta. In any event, on the merits, *Wolf Metals* primarily relies on *Motores* and *NEC*. (*Id*. at pp. 708-709 & fn. 4.) This reliance is unavailing for reasons we have already discussed. Neither *Motores* nor *NEC* stands for the proposition that a defendant must present an "evidence-based" defense in the underlying litigation to satisfy due process. *Wolf Metals* also cites several cases where an amendment was allowed after the defendant did present an "evidence-based" defense. (*Id*. at p. 709.) While *Wolf Metals* correctly interprets the facts of each case, the cases do not imply that an "evidence-based" defense is *required* for due process purposes. Instead, these cases focus on the alleged alter ego's control of the underlying litigation and whether that litigation was contested at all. (See *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1110 [amendment proper where alter ego controlled defense of the underlying litigation and the defendant contested the plaintiff's claims, even if the defendant "mounted a lackluster defense and failed to contest the lawsuit effectively"]; *Jack Farenbaugh & Son v. Belmont*

17

*Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1029-1030 [amendment proper where alter ego "controlled the litigation"]; *Schoenberg v. Romike Properties* (1967) 251 Cal.App.2d 154, 168 ["It is well settled that the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation."].) These elements are satisfied here.

As noted, amendment of a judgment to add an alter ego "is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." (*NEC*, *supra*, 208 Cal.App.3d at p. 778.) The trial court found that Bentivegna and Lawrence, through their alter ego NexxCom, litigated the underlying matter for two years and were therefore virtually represented in the litigation. The fact that the litigation ended in default, rather than competing evidentiary presentations, does not as a matter of law eliminate Bentivegna and Lawrence's ultimate culpability. Based on their abuse of NexxCom's corporate status and their control of NexxCom's years-long litigation against E-Band, the trial court could find they were still the "real" defendants here under established equitable principles. For the same reasons, it does not violate their due process rights to recognize them as such by amending the judgment.

"Alter ego 'is an extreme remedy, sparingly used.' [Citation.] ' "The standards for the application of alter ego principles are high, and the imposition of [alter ego] liability . . . is to be exercised reluctantly and cautiously." ' [Citation.] Still, ' "[t]he greatest liberality is to be encouraged" ' in allowing judgments to be amended to add the 'real defendant,' or alter ego of the original judgment debtor, ' "in order to see that justice is done." ' " (*Highland Springs*, *supra*, 244 Cal.App.4th at p. 281.) The trial court here

18

found that equity required amending the judgment against NexxCom to name the true defendants, Bentivegna and Lawrence. They have not shown the court violated due process or abused its discretion by doing so.

## DISPOSITION

The judgment is affirmed. E-Band is entitled to its costs on appeal.

GUERRERO, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

19